Chesson v. Rives, 2013 NCBC 49.

STATE OF NORTH CAROLINA

COUNTY OF DAVIDSON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 3382

W. CHRISTOPHER CHESSON,
JAMES G. LOVELL, and DAVID D.
FRASER,

        Plaintiffs,

      v.

W. LEON RIVES, LEON L. RIVES, II,
and RIVES & ASSOCIATES, LLP,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON DEFENDANTS' MOTION TO DISMISS**

{1}     THIS MATTER is before the court on Defendants' Renewed Motion to Dismiss Plaintiffs' Amended Complaint ("Motion"), pursuant to Rule 12(b)(6). For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

*The Tippett Law Firm, PLLC by Scott K. Tippett for Plaintiffs.*

*Sharpless & Stravola, P.A. by Frederick K. Sharpless for Defendants.*

Gale, Judge.

## I.    PARTIES

{2}     Plaintiff W. Christopher Chesson ("Chesson") is a citizen and resident of Davidson County, North Carolina. (Am. Compl. ¶ 1.) Chesson was a partner and owner of twenty percent (20%) of the Defendant Rives & Associates, LLP.

{3}     Plaintiff James G. Lovell ("Lovell") is a citizen and resident of Mecklenburg County, North Carolina. (Am. Compl. ¶ 2.) Lovell was a partner and owner of .01 percent (.01%) of the Defendant Rives & Associates, LLP.

{4}    Plaintiff David D. Fraser ("Fraser") is a citizen and resident of Cabarrus County, North Carolina. (Am. Compl. ¶ 3.) Fraser was a partner and owner of .01 percent (.01%) of the Defendant Rives & Associates, LLP.

{5}    Defendant William Rives is a citizen and resident of Davidson County, North Carolina. (Am. Compl. ¶ 4.)

{6}    Defendant Leon Little Rives, II ("Leon Rives") is a citizen and resident of Davidson County, North Carolina. (Am. Compl. ¶ 5.) Collectively, William and Leon Rives (the "Riveses") are partners and owners of eighty percent (80%) of Defendant Rives & Associates, LLP. (Am. Compl. ¶ 49.)

{7}    Defendant Rives & Associates, LLP ("Rives & Associates") is a registered limited liability partnership formed under the laws of the state of North Carolina to engage in the practice of certified public accounting. Rives & Associates maintains offices in Davidson, Mecklenburg, and Wake Counties. (Am. Compl. ¶ 6.)

## II.    PROCEDURAL BACKGROUND

{8}    Plaintiffs filed suit in Davidson County on October 25, 2012. On December 19, 2012 the case was designated a mandatory complex business case by Order of Chief Justice Sarah Parker and assigned to the undersigned. Defendants filed their Motion to Dismiss on January 18, 2013. At the hearing on that motion on March 12, 2013, the court granted Plaintiff's' request to amend their Complaint, but allowed Defendants to restate their Motion as to the Amended Complaint.

{9}    Plaintiffs filed their Amended Complaint on April 1, 2013. The Amended Complaint alleges claims for: (1) information and accounting; (2) breach of fiduciary duty and duty of good faith against William Rives and Leon Rives; (3) fraud against William Rives and Leon Rives; (4) constructive expulsion against all Defendants; (5) punitive damages; and (6) declaratory judgment against all Defendants.

{10}    Defendants filed their Motion on April 30, 2013.  The Motion has been fully briefed, the court heard oral argument on June 26, 2013, and the matter is ripe for disposition.

## III.    FACTUAL BACKGROUND

{11}    The court does not make findings of fact in connection with the Motion, as a motion to dismiss "does not present the merits, but only [determines] whether the merits may be reached." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986).  For the purposes of the Motion the court assumes the facts alleged in the Amended Complaint are true and makes inferences in Plaintiffs' favor, yet is not bound to legal conclusions asserted in the Amended Complaint.

{12}    All of the individual Parties are certified public accountants licensed by the North Carolina State Board of Certified Public Accountant Examiners.  (Am. Compl. ¶¶ 10, 16, 18–19, 22.)  Before Plaintiffs joined Rives & Associates, the partnership's practice consisted of basic bookkeeping and individual and corporate federal and state income tax work, and the partnership did not have any meaningful experience performing audit services, attest services, monitoring Sarbanes-Oxley compliance, counseling high net worth and ultra high net worth clients, auditing privately held companies or governmental entities, or assisting with complex individual, corporate, and partnership federal and state income tax returns.  (Am. Compl. ¶¶ 27–30.)  Plaintiffs had such experience as a result of their work at large accounting firms prior to joining the partnership, thus enabling the firm to expand into and market those areas.  (Am. Compl. ¶¶ 23, 32.)

{13}    The Parties entered a Partnership Agreement which vests the management of the firm in the partners, (Am. Compl. ¶ 52.), providing that each partner is entitled to one vote for each percentage of ownership and that all partnership issues are to be determined by a two-thirds vote.  (Defs. Br. In Supp. of Mot. to Dismiss, Ex. A (hereinafter "Partnership Agreement"), §§ 2.05, 2.06.)  At all

times, the Riveses controlled more than two-thirds of votes, with each owning forty percent (40%). (Partnership Agreement, § 3.01.) The Partnership Agreement also provides a mechanism for partner withdrawal, including the minimum time for providing notice of withdrawal, and a formula to determine a withdrawing partner's interest. (Partnership Agreement, §§ 7.01, 7.05.)

{14} Chesson contends that he had extensive discussions with the Riveses about partnership management before he joined, (Am. Compl. ¶ 31,) and after he and the other Plaintiffs joined, they developed several policies and procedures governing any audit or attest engagement, independence confirmations, and internal controls, which were all adopted as mandatory policies of the partnership. (Am. Compl. ¶¶ 33–34, 37, 41, 44; Am. Compl. Exs. 2, 3.)

{15} The dispute which ultimately led to Plaintiffs' withdrawal began over the interpretation and implementation of these mandatory policies, procedures, and Plaintiffs' perception that failure to abide by them violated professional standards. (Am. Compl. ¶¶ 61–64.) Plaintiffs complain further that they were excluded from any meaningful participation in management, (Am. Compl. ¶¶ 57, 60,) that the Riveses used resources and capital of the company to fund and operate School Efficiency Consultants, LLC ("SEC") without their knowledge, and that the Riveses improperly solicited consulting business from clients for whom Rives & Associates was at the same time performing audit or attest services, (Am. Compl. ¶ 60.) Plaintiffs contend that the Riveses used their majority position to override Plaintiffs' insistence that the partnership abide by its policies and governing professional standards. (Am. Compl. ¶¶ 60, 62, 79, 84, 87.) Plaintiffs also allege that the Riveses manipulated client accounts so that credit for revenue from those client accounts would flow to them individually instead of the Plaintiffs. (Am. Compl. ¶ 158.)

{16} On October 5, 2012, Plaintiffs notified Rives & Associates via letter of their immediate withdrawal from the firm. (Am. Compl. ¶ 136). The Partnership Agreement requires four months' notice of withdrawal, but the other partners can

accelerate the effective date of withdrawal by a two-thirds vote. (Partnership Agreement § 7.01.)

{17} Plaintiffs filed this suit on October 25, 2012.

## IV. STANDARD OF REVIEW

{18} The appropriate inquiry on a motion to dismiss pursuant to Rule 12(b)(6) is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)). A motion to dismiss may be granted if the complaint reveals the absence of facts required to make out a claim for relief or if the complaint reveals some fact that necessarily defeats the claim. *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002). "When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment." *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009). Additionally, the court may properly consider a contract that is the subject matter of the complaint, even if the plaintiff did not attach it to the complaint. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).

## V. ANALYSIS

A. <u>Plaintiffs Have Standing to Bring Claims for the Value of Their Interests at the Time of Their Withdrawal</u>

{19} Defendants contend that Counts Two (Breach of Fiduciary Duty), Three (Fraud), and Five (Punitive Damages) of the Amended Complaint seek relief that properly is recoverable by the partnership, if at all, and not by the individual

partners, so that Plaintiffs have no standing to assert these claims. (Defs.' Br. in Supp. of Mot. to Dismiss (hereinafter "Defs.' Br.") 6.) Advancing their position at oral argument, Defendants cited several cases arising from claims by limited partners dealing with limited partnership matters.[1] (Tr. 27:24–28:5.) Plaintiffs counter that this dispute between general partners is not controlled by the doctrine applicable to limited partners. (Pls.' Memo. of Law in Opp'n to Defs.' Renewed Mot. to Dismiss (hereinafter "Pls.' Memo.") 7.) Defendants further contend that Plaintiffs lost standing when they withdrew from the partnership.

{20}    The court determines that Plaintiffs are limited to claims provided for in the Partnership Agreement or under the Uniform Partnership Act as to the value of Plaintiffs' partnership interest at the time of their withdrawal. The court need not further consider Plaintiffs' standing to assert claims beyond Plaintiffs' partnership interest at the time of their withdrawal, including whether the partnership might have enjoyed greater future success had Defendants managed it properly.

{21}    A partners' rights to partnership property and income are personal property rights, N.C. Gen. Stat. §§ 59-54–59-56, and he does not forfeit those rights until the partnership affairs have been wound up and the partnership is terminated, *see* N.C. Gen. Stat. §§ 59-59–59-73 (describing dissolution and winding up of partnership affairs). This court held in *EHP Land Co., Inc. v. Bosher* that a partner's withdrawal from a partnership did not deprive him of standing to bring claims to recover his partnership interest. *See* 2010 NCBC LEXIS 19, at *16–*17 (N.C. Super. Ct. Oct. 5, 2010) (noting that partner's withdrawal "may have brought about a dissolution" that enabled partner to claim partnership interest). Similarly, in *Lewis v. Edwards*, a partner brought claims for an accounting, negligence, breach of fiduciary duty, and unfair and deceptive trade practices nearly a year after

---

[1] Defendants rely mainly on *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 525 S.E.2d 441 (2002), which extended principles of corporate shareholder standing from *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 448 S.E.2d 215 (1997) to limited partners bringing claims against general partners in limited partnerships.

withdrawing from the partnership, but the court did not dismiss the case on standing grounds. 159 N.C. App. 384, 386, 583 S.E.2d 387, 389 (2003).

{22}    Although Plaintiffs withdrew from the partnership, they retained personal rights to bring claims for the value of their partnership interest at the time of their withdrawal. This includes claims that Plaintiffs suffered losses *before* the withdrawal, thereby reducing the value of Plaintiffs' partnership shares at the time of withdrawal. The Amended Complaint does not suggest damages or losses suffered by the partnership as of the date of withdrawal other than the possible diversion of partnership funds to the Riveses individually or SEC.

B. <u>Plaintiffs' Claims for Their Partnership Interests at the Time of Their Withdrawal Survive Their Withdrawal From the Partnership</u>

{23}    At oral argument, Plaintiffs described their injury as "the value of [Plaintiffs'] investment share in the partnership, . . . [Plaintiffs' share] of the business assets," and Plaintiffs' share of the partnership business when they withdrew. (Tr. 29:12–20). Defendants contend that Plaintiffs' claims as to any losses of additional future revenue, opportunities, or profits caused by Defendants' alleged mismanagement and failure to follow procedures collapse into a breach of contract claim for breach of the Partnership Agreement and claims outside of that agreement are barred.

{24}    A partnership agreement is a contract between the partners. When a party to a contract "simply fails to perform the terms of the contract, even if that failure . . . was . . . negligent or intentional[,]" contract law governs claims where "the injury resulting from the breach is damage to the subject matter of the contract." *Lord v. Customized Consulting Specialty, Inc.*, 182 N.C. App. 635, 639, 643 S.E.2d 28, 30–31 (2007) (explaining rationale for the economic loss rule in tort cases (citing *Spillman v. Am. Homes of Mocksville, Inc.*, 108 N.C. App. 63, 65, 422 S.E.2d 740, 741–42 (1992))). The relations between partners, including capital contribution repayments, indemnity, advances, admission of new members, and—

most importantly—management rights, are generally governed by a partnership agreement and are interpreted as a matter of contract. *See generally* N.C. Gen. Stat. §§ 59-48–59-49 (defining default rules for partnership applicable in the absence of a partnership agreement).

{25}    Subject to statutory requirements, a partnership agreement may provide procedures and remedies for partner withdrawal, dissolution, and the winding up process, including accounting and valuation of partnership property and partners' interests. *See, e.g., In re W. W. Jarvis & Sons*, 194 N.C. App. 799, 803–05, 671 S.E.2d 534, 537–38 (2009) (noting that partnership agreement defines remedies upon withdrawal of partner or dissolution of partnership); *Lewis v. Edwards*, 147 N.C. App. 39, 42 n.1, 554 S.E.2d 17, 19 n.1 (2001) (noting that statute governs accounting remedies when partnership agreement does not specify manner of accounting in a dissolution scenario); *Crosby v. Bowers*, 87 N.C. App. 338, 345, 361 S.E.2d 97, 102 (1987) (referring to partnership agreement to define withdrawal, dissolution, and remedies of partners); *In re Cohoon*, 60 N.C. App. 226, 230–31, 298 S.E.2d 729, 730–31 (1983) (noting partnership agreement describes manner of dissolution); *EHP Land Co., Inc. v. Bosher*, 2011 NCBC LEXIS 10, at *23 (N.C. Super. Ct. Feb. 24, 2011) (explaining that partnership agreement determines the value of withdrawing partner's interest).

{26}    However, a partnership agreement cannot eliminate those enumerated fiduciary duties partners owe to one another as a matter of law. N.C. Gen. Stat. § 59-60; *Hajmm Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 588, 403 S.E.2d 483, 489 (1991); *Casey v. Grantham*, 239 N.C. 121, 79 S.E.2d 735 (1954); *Tai Sports, Inc. v. Hall*, 2012 NCBC LEXIS 64, at *96 (N.C. Super. Ct. Dec. 28, 2012). These duties include providing full information to the partnership, accounting for the use of partnership property, disclosing self-dealing transactions, and remitting profits obtained through transactions affiliated with the partnership's business. N.C. Gen. Stat. §§ 59-50–59-51; *Compton v. Kirby*, 157 N.C. App. 1, 16, 577 S.E.2d 905, 915 (2003) (describing fiduciary duties in partnership context).

{27}    Plaintiffs agreed to the management structure which gave the Riveses control.  (Partnership Agreement §§ 2.05–2.06.)  Their agreement bars claims based on disagreements with managerial decisions unless the effect of those decisions violated fiduciary duties that cannot be eliminated by the Partnership Agreement. All allegations supporting Plaintiffs' constructive fraud claim concern the Riveses' management of the partnership and that claim is DISMISSED.

{28}    Plaintiffs' breach of fiduciary duty claim is allowed only insofar as Plaintiffs specifically allege that the Riveses breached their fiduciary duties while Plaintiffs were partners by manipulating client accounts to divert partnership revenue to themselves personally or using partnership assets to form SEC.  (Am. Compl. ¶¶ 60, 158.)  Such allegations state claims for breach of the fiduciary duties that the Partnership Agreement cannot eliminate.  These claims are remedied through an accounting and may be pursued only to the extent they affected Plaintiffs' partnership interests as of the time of their withdrawal from the partnership.

{29}    As between Plaintiffs and the non-withdrawing partners, the withdrawal notice caused a dissolution, even though the non-withdrawing partners could continue the partnership pursuant to Section 1.03 of the Partnership Agreement.  *See* N.C. Gen. Stat. § 59-61; *Sturm v. Goss*, 90 N.C. App. 326, 332, 368 S.E.2d 399, 402–03 (1988) (noting that "dissolution occurs automatically by operation of law upon any partner's unequivocal expression of an intent and desire to dissolve the partnership").

{30}    The Uniform Partnership Act provides default remedies which can be overridden by agreement.  N.C. Gen. Stat. § 59-68.  Absent agreement to the contrary, upon dissolution which was not caused by contravention of the partnership agreement, a partner's right is his *pro rata* share of the net value of the partnership assets at the time of dissolution.  *Id.*  When a partner causes dissolution by breaching the partnership agreement (as arguably Plaintiffs may have here by failing to give the four months' notice required by Section 7.1 of the Partnership Agreement), and the non-breaching partners continue the partnership's

business, the breaching partner's right is his value at the time of dissolution, less damages caused to the partnership by that "wrongful" dissolution. *See* N.C. Gen. Stat. § 59-68(b)(3)b.; *accord* 2 Alan R. Bromberg & Larry E. Ribstein, *Bromberg and Ribstein on Partnership*, § 7.03(e) (2013).[2] In any event, Plaintiffs cannot recover profits or value that may have been expected to be attained by the partnership through business continued by non-withdrawing partners after the dissolution unless the Partnership Agreement provided for such recovery. Plaintiffs have not alleged any such agreement.

{31}    The court concludes that Plaintiffs may pursue such partnership rights they have which survived dissolution through an accounting. Plaintiffs specifically alleged a claim for accounting in their Amended Complaint, (Am. Compl. ¶¶ 138–45,) and confirmed at oral argument that the claim is intended to address their breach of fiduciary duty claim, (Tr. 35:5–17; 36:12–19; 39:25–40:13.) Defendants counter that the Amended Complaint does not sufficiently allege facts that would entitle Plaintiffs to an accounting under North Carolina General Statute section 59-52, particularly as Plaintiffs failed to plead a formal demand and refusal.

{32}    Under section 59-52:

> Any partner shall have the right to a formal account as to partnership affairs: (1) If he is wrongfully excluded from the partnership business or possession of its property by his copartners, (2) If the right exists under the terms of any agreement, (3) As provided by [section] 59-51, (4) Whenever other circumstances render it just and reasonable.

{33}    Subsection 3 of section 59-52 permits an accounting claim for breach of fiduciary duty claims stated under section 59-51. Section 59-73 further grants partners accounting rights against "the person or partnership continuing the business" after a dissolution, unless the partners agreed otherwise. N.C. Gen. Stat. § 59-73. Defendants suggest that *Dean v. Manus Homes, Inc.* and *Casey v.*

---

[2] A partner's interest is his or her "share of the profits and surplus" of the partnership. N.C. Gen. Stat. § 59-56. Partners are presumed to have equal shares in profits unless a partnership agreement requires otherwise. N.C. Gen. Stat. § 59-48(1). Thus, the remedy provided in section 59-68(b)(3)b. is ultimately defined by reference to how a partnership agreement allocates profits and surplus between partners.

*Grantham* require a formal demand and refusal before a claim for accounting can proceed. 143 N.C. App. 549, 546 S.E.2d 160 (2001); 239 N.C. 121, 125, 79 S.E.2d 735, 738 (1954). Neither case explicitly so held.

{34} While Plaintiffs admit that they did not make a formal demand for profits, they allege that they requested access to the books and records to uncover improper conduct and were denied. (Am. Compl. ¶ 140; Tr. 39:3–40:8, 41:16–42:7.) The court concludes that Plaintiffs' accounting claim is not barred by their failure to make demand. No North Carolina decision has ever held that accounting claims under the Uniform Partnership Act require an accounting, and the court finds persuasive the reasoning of the Ohio court construing an identical statutory provision in *Hanes v. Giambrone*, 14 Ohio App. 3d 400, 404–05, 471 N.E.2d 801, 806–07 (1984).

{35} In sum, the court concludes that the Amended Complaint states a claim for accounting that survives Rule 12(b)(6), but the claims to be accounted for are only those consistent with this Order.

C. North Carolina Does Not Recognize a Claim of Constructive Expulsion

{36} Plaintiffs contend that North Carolina recognizes a claim for constructive expulsion when partners make working conditions so intolerable as to force a resignation, but only cite cases from other jurisdictions. *See, e.g.*, *Cadwalader Wickersham, & Taft v. Beasley*, 728 So. 2d 253 (Fla. Ct. App. 1998) (holding that wrongful exclusion of one partner by a co-partner from participation in the conduct of the business may be grounds for judicial dissolution). The court first notes that Plaintiffs have failed to allege facts sufficient to state a claim within these precedents, but more importantly the court concludes that North Carolina does not recognize a claim for wrongful expulsion from a partnership. Accordingly, the claim for wrongful expulsion should be DISMISSED.

D.  Plaintiffs Present No Separate Claim for Declaratory Judgment

{37}    Plaintiffs ask the court to declare that the Riveses' conduct and violations of company policy have frustrated the purpose of or repudiated the Partnership Agreement, thereby either excusing Plaintiffs' duty of performance or constituting a waiver of any right that the Riveses may have to enforce the agreement.  (Am. Compl. ¶¶ 180–181.)

{38}    Plaintiffs' request for declaratory judgment is simply an effort to repackage claims based on allegations of the Riveses' mismanagement that have otherwise been dismissed.   There is no actionable separate claim for declaratory judgment, and that claim should be DISMISSED.

E.  Plaintiffs Have Not Pleaded Allegations Sufficient to Recover Punitive Damages

{39}    Rule 9(k) of the North Carolina Rules of Civil Procedure requires that the allegations supporting a claim for punitive damages be stated with particularity.

{40}    Plaintiffs' Amended Complaint only seeks punitive damages under the constructive fraud and constructive expulsion claims.  (Am. Compl. ¶¶ 166, 173.) The court has dismissed those claims, so they cannot support a punitive damage claim.  Further, Plaintiffs' claim for punitive damages asserts only generally that the Riveses' "conduct as set forth in this complaint" entitles Plaintiffs to punitive damages.  (Am. Compl. ¶¶ 174–75.) This allegation fails under Rule 9(k).

## VI.    CONCLUSION

{41}    For the foregoing reasons, Defendants' Motion as to Plaintiffs' claim for breach of fiduciary duty and accounting for claims consistent with this Order is DENIED, but is GRANTED as to all other claims.

IT IS SO ORDERED, this 28th day of October, 2013.