SHELLEY AUSTIN WOOD v. GUILFORD COUNTY, BURNS INTERNATIONAL SECURITY SERVICES CORPORATION, F/K/A BORG-WARNER PROTECTIVE SERVICES CORPORATION AND BURNS INTERNATIONAL SECURITY SERVICES

No. 318PA01

(Filed 1 February 2002)

### 1. Appeal and Error— preservation of issues—subject matter jurisdiction

The question of subject matter jurisdiction was properly raised for the first time on appeal. Subject matter jurisdiction may be raised at any time, even in the Supreme Court.

### 2. Workers' Compensation— assault in courthouse—not exclusive remedy

The Workers' Compensation Act did not provide the exclusive remedy for a court employee assaulted in a courthouse, and the Industrial Commission was not the exclusive forum for a claim against the county, because the county was a stranger to the employment relationship between the plaintiff and the Administrative Office of the Courts—a state agency. The county was not assisting the Administrative Office of the Courts nor conducting the business of the courts by providing judicial facilities and security.

### 3. Cities and Towns; Counties— public duty doctrine—county retaining private security company—courthouse assault

The public duty doctrine barred a negligence claim against a county arising from an assault on a state judicial employee in a courthouse where the county had contracted with a private company for security at the courthouse. The public duty doctrine recognizes that local law enforcement acts for the benefit of the public rather than specific individuals and refuses to judicially impose an overwhelming liability on local government for not preventing every crime. Counties are required by N.C.G.S. § 7A-302 to provide judicial facilities, but the legislature did not intend to subject counties to tort liability for claims arising from third-party criminal conduct, particularly where a county has undertaken security measures not required by statute in an effort to protect the public. *Isenhour v. Hutto*, 350 N.C. 601, is distinguished.

4. **Cities and Towns; Counties— public duty doctrine— exceptions—courthouse assault**

The two exceptions to the public duty doctrine did not apply to an action by a state judicial employee against a county arising from an assault in a courthouse where plaintiff did not allege a special relationship with this county, plaintiff's status as an employee did not create a special relationship involving greater protection than afforded the general public, the statute requiring that counties provide judicial facilities does not create a special duty to employees working in the courthouses, and the record is devoid of any allegation that this county promised to protect plaintiff from third-party criminal assaults.

5. **Immunity— waiver—preceding issue—whether duty exists**

A plaintiff's claim that a county waived its protection under the public duty doctrine by hiring a security firm was not addressed because the issue of whether a duty is owed logically precedes waiver, and the county owed no duty to plaintiff individually.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 143 N.C. App. 507, 546 S.E.2d 641 (2001), affirming in part and reversing in part an order entered 29 March 2000 by Albright, J., in Superior Court, Guilford County. Heard in the Supreme Court 14 November 2001.

*Fisher, Clinard & Craig, PLLC, by John O. Craig, III, and Shane T. Stutts, for plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr., and Mark A. Davis; and Jonathan V. Maxwell, Guilford County Attorney, and Mercedes Oglukian Chut, Deputy Guilford County Attorney, for defendant-appellant Guilford County.*

MARTIN, Justice.

Plaintiff Shelley Austin Wood initiated this action against defendants for injuries sustained on 31 March 1998 when she was assaulted on the second floor of the Guilford County courthouse (the courthouse). Plaintiff was employed by the Administrative Office of the Courts (AOC) and worked in the courthouse. Plaintiff's assailant was subsequently convicted of attempted first-degree rape and assault with a deadly weapon inflicting serious injury.

## WOOD v. GUILFORD CTY.

[355 N.C. 161 (2002)]

On 30 July 1999, plaintiff filed a complaint against Guilford County (the County) and Burns International Security Services Corporation f/k/a Borg-Warner Professional Services Corporation (Burns Security), the firm contracted by the County to provide security at the courthouse, alleging the following claims for relief: (1) the County breached its duty by failing to provide adequate security at the courthouse; (2) Burns Security breached its duty by failing to provide adequate security at the courthouse; (3) as a result of the County's willful and wanton conduct, plaintiff was entitled to punitive damages; and (4) plaintiff, as an AOC employee stationed at the courthouse, was an intended third-party beneficiary of the security contract between the County and Burns Security, which both breached the contract by failing to provide reasonably adequate security at the courthouse.

In its answer, the County asserted governmental immunity and the public duty doctrine as complete bars to plaintiff's action and moved to dismiss the complaint on the ground that plaintiff failed to state a claim for relief under North Carolina Rule of Civil Procedure 12(b)(6). The County also alleged that punitive damages were not recoverable against a local government under North Carolina law.

On 29 March 2000, the trial court entered an order granting the County's motion to dismiss with respect to plaintiff's punitive damages claim but denying the motion with respect to plaintiff's negligence and breach of contract claims. On 7 April 2000, the County filed an interlocutory appeal from the trial court's order. On 15 May 2001, the Court of Appeals entered a decision affirming the trial court's denial of the County's motion to dismiss the negligence claims and reversing the trial court's order with respect to the breach of contract claim. This Court allowed the County's petition for discretionary review on 22 August 2001 to determine (1) whether the Court of Appeals erred in failing to hold that the trial court lacked subject matter jurisdiction over the action, and (2) whether the Court of Appeals erred in failing to determine that plaintiff's claims were barred by the public duty doctrine and governmental immunity.

[1] The County initially raised the defense of subject matter jurisdiction in the Court of Appeals. It argues before this Court that the North Carolina Workers' Compensation Act (the Act) provides the exclusive remedy for a state employee injured while working in a building maintained by the County and that this case should therefore have

been brought before the North Carolina Industrial Commission (the Industrial Commission). Plaintiff argues that the trial court had subject matter jurisdiction over the instant action because the Act does not extend to the type of relationship existing between the County and the State of North Carolina.

At the outset we note that "[t]he question of subject matter jurisdiction may be raised at any time, even in the Supreme Court." *Lemmerman v. A.T. Williams Oil Co.*, 318 N.C. 577, 580, 350 S.E.2d 83, 85 (1986); *see also* N.C.G.S. § 8C-1, Rule 12(h)(3) (1999). The County therefore properly raised this defense on appeal. Accordingly, the threshold question is whether the trial court properly exercised subject matter jurisdiction over plaintiff's negligence claim against the County.

[2] It is well settled that the Act provides the exclusive remedy when an employee is injured by accident arising out of and in the course and scope of employment. *See* N.C.G.S. § 97-10.1 (1999); *Bryant v. Dougherty*, 267 N.C. 545, 548, 148 S.E.2d 548, 551 (1966). Specifically, the Act bars a worker from bringing a common law negligence action against the employer. *Pleasant v. Johnson*, 312 N.C. 710, 713, 325 S.E.2d 244, 247 (1985); *see also Hicks v. Guilford Cty.*, 267 N.C. 364, 148 S.E.2d 240 (1966). The exclusivity provisions of the Act extend to parties "conducting [the employer's] business," N.C.G.S. § 97-9 (1999), whereby an employer may be liable to an employee under the Act for injuries negligently caused by another employee or by a party acting as an agent of the employer. *See Strickland v. King*, 293 N.C. 731, 733, 239 S.E.2d 243, 244 (1977). This Court has interpreted N.C.G.S. § 97-10—the predecessor to N.C.G.S. § 97-10.1—as allowing an injured worker to bring a common law negligence action against a third party, however, when the third party is a " 'stranger to the employment.' " *Jackson v. Bobbitt*, 253 N.C. 670, 677-78, 117 S.E.2d 806, 811-12 (1961) (quoting *Warner v. Leder*, 234 N.C. 727, 69 S.E.2d 6 (1952), *overruled on other grounds by Woodson v. Rowland*, 329 N.C. 330, 348-49, 407 S.E.2d 222, 233 (1991), *and by Pleasant*, 312 N.C. at 718, 325 S.E.2d at 250) (holding that nonemployee driver was a stranger to the employment because employees injured in car accident did not show that transportation provided was anything more than "gratuitous or a mere accommodation"), *quoted in Pleasant*, 312 N.C. at 713, 325 S.E.2d at 247.

North Carolina law requires counties to provide facilities for the operation of the state's judicial system: "In each county in which

**WOOD v. GUILFORD CTY.**

[355 N.C. 161 (2002)]

a district court has been established, courtrooms . . . and related judicial facilities (including furniture), as defined in this Subchapter, shall be provided by the county." N.C.G.S. § 7A-302 (1999). In addition to providing judicial facilities, the County elected to provide security for the courthouse through a contract negotiated with Burns Security. The County argues that by providing the courthouse, as well as the security for the courthouse, it was conducting the state's business and therefore was acting as an agent of the state, making the Industrial Commission the proper forum for this action. We disagree.

The County was not employed by the state, nor was it required by the express terms of N.C.G.S. § 7A-302 to provide security for the courthouse. The AOC is responsible for administering the state's judicial system. By providing judicial facilities and contracting with a private security company, the County was not assisting the AOC, nor was the County conducting the business of the AOC for purposes of N.C.G.S. § 97-9. Insofar as its provision of the building and security was concerned, the County remained a stranger to the actual employment relationship existing between plaintiff and the state. Accordingly, we reject the County's argument that the Industrial Commission provided the exclusive forum for the instant action.

The County next argues that the trial court erred by denying its Rule 12(b)(6) motion to dismiss plaintiff's negligence claim on grounds of the public duty doctrine and governmental immunity. Plaintiff argues that both the trial court and the Court of Appeals correctly determined that the public duty doctrine is unavailable to the County and, furthermore, that the County waived its governmental immunity by contracting with Burns Security and requiring that "[the County] be named as an additional insured on the Defendant Burns' liability insurance policy."

We observe that "[a] waiver of governmental immunity . . . does not give rise to a cause of action where none previously existed." *Lynn v. Overlook Dev.*, 98 N.C. App. 75, 79, 389 S.E.2d 609, 612 (1990) *aff'd in part and rev'd in part*, 328 N.C. 689, 403 S.E.2d 469 (1991). Our consideration of the public duty doctrine therefore logically precedes the question of waiver of governmental immunity. In other words, absent the existence of a duty, a waiver of governmental immunity in and of itself affords little aid to a plaintiff seeking to recover damages for a municipality's alleged negligence. *Florence v. Goldberg*, 44 N.Y.2d 189, 195, 375 N.E.2d 763, 766 (1978).

**[3]** On a Rule 12(b)(6) motion to dismiss, the question is whether, as a matter of law, the allegations of the complaint, treated as true, state a claim upon which relief can be granted. *Isenhour v. Hutto*, 350 N.C. 601, 604, 517 S.E.2d 121, 124 (1999). Dismissal under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim. *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985).

Actionable negligence occurs only where there is "a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances in which they were placed." *Mattingly v. N.C. R.R. Co.*, 253 N.C. 746, 750, 117 S.E.2d 844, 847 (1961). Moreover, in the context of the provision of police protection by a local government, the duty breached must be more specific than a duty owing to the general public. *Lovelace v. City of Shelby*, 351 N.C. 458, 526 S.E.2d 652 (2000). This principle of law, known as the public duty doctrine, was first applied by this Court in *Braswell v. Braswell*, 330 N.C. 363, 370, 410 S.E.2d 897, 901 (1991). The doctrine recognizes that a local government entity "and its agents act for the benefit of the public, and therefore, there is no liability for the failure to furnish police protection to specific individuals." *Id.* Under the public duty doctrine, governmental entities have no duty to protect particular individuals from harm by third parties, thus no claim may be brought against them for negligence. *See id.* This rule acknowledges the limited resources of law enforcement and refuses to impose, by judicial means, an overwhelming burden of liability on local governments for failure to prevent every criminal act. *Id.* at 371, 410 S.E.2d at 901.

In *Braswell*, this Court also recognized that while the public duty doctrine is a necessary and reasonable limitation on liability, there are two well-established exceptions to the doctrine that prevent inequities to certain individuals: (1) when there is a special relationship between the injured party and the police; and (2) when a municipality creates a special duty by promising protection to an individual. *Id.* at 371, 410 S.E.2d at 902.

As applied to local government, this Court has declined to expand the public duty doctrine beyond agencies other than local law enforcement departments exercising their general duty to protect the

public. *Thompson v. Waters*, 351 N.C. 462, 464-65, 526 S.E.2d 650, 651-52 (2000); *Lovelace*, 351 N.C. at 461, 526 S.E.2d at 654. In *Lovelace*, we stated:

> While this Court has extended the public duty doctrine to state agencies required by statute to conduct inspections for the public's general protection, *see Hunt v. N.C. Dep't of Labor*, 348 N.C. 192, 499 S.E.2d 747 (1998); *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 495 S.E.2d 711, *cert. denied*, 525 U.S. 1016, 142 L. Ed. 2d 449 (1998), we have never expanded the public duty doctrine to any local government agencies other than law enforcement departments when they are exercising their general duty to protect the public, *see Isenhour*[, 350 N.C. at 604, 517 S.E.2d at 124] (refusing to extend the public duty doctrine to shield a city from liability for the allegedly negligent acts of a school crossing guard). . . . Thus, the public duty doctrine, as it applies to local government, is limited to the facts of *Braswell*.

351 N.C. at 461, 526 S.E.2d at 654.

In light of the fact that we have previously delineated the boundaries of the public duty doctrine—as applied to local government—to the provision of police protection, *see id.*, the first issue we must address is whether the County, in providing security at the courthouse, was providing a service analogous to police protection to the general public. The Court of Appeals reasoned that the public duty doctrine was inapplicable to the present case because "[d]efendant, as a local government, was not acting in a law enforcement capacity or exercising its general duty to protect the public by providing security to the Courthouse, but was acting as owner and operator of the Courthouse." *Wood v. Guilford Cty.*, 143 N.C. App. 507, 512, 546 S.E.2d 641, 645 (2001).

The Court of Appeals' holding that the public duty doctrine does not preclude local government liability to an individual injured by the intentional criminal act of a third party is inconsistent with the conceptual underpinnings of the public duty doctrine as recognized in *Braswell*: that local government's duty to protect against crime flows to the general public rather than to specific individuals. 330 N.C. at 371, 410 S.E.2d at 901. We observe that N.C.G.S. § 7A-302 essentially renders the County an involuntary landlord by requiring it to provide "courtrooms, office space . . . , and related judicial facilities" for the state's judicial system. We do not believe that the General Assembly intended, by enacting section 7A-302, to subject the County to tort lia-

bility for claims arising from third-party criminal conduct particularly when, as here, the County undertook affirmative security measures not expressly required by section 7A-302 in its apparent effort to protect the public from harm.

Plaintiff argues before this Court that because the hired security guards were not sworn public officers with the full panoply of authority reserved to those in law enforcement (i.e., the power to arrest, to investigate crimes, to operate the County jail, to enforce safety statutes, and to serve warrants and civil court documents), they are not part of a law enforcement *department*, as required by the language in *Lovelace*, nor are they providing *police* protection, as required by *Braswell*. In our view, this is an overly literal reading of the limitations we have placed on the public duty doctrine as applied to local governments in *Lovelace*, and an overly narrow interpretation of the doctrine itself as articulated in *Braswell*. The test of whether the public duty doctrine applies is a functional one and includes consideration of the nature of the duty assumed by the local governmental defendant.

For example, in *Isenhour*, the plaintiff's son was struck by a car and killed after a school crossing guard, stationed at an intersection by the City of Charlotte, gave the child permission to cross the street. 350 N.C. at 608, 517 S.E.2d at 126. Plaintiff brought a negligence action against the city. This Court held that, unlike the provision of police protection to the general public, as in *Braswell*, or the statutory duty of a state agency to inspect various facilities for the benefit of the public, as in *Stone* and *Hunt*, a school crossing guard is employed to provide a protective service to an identifiable group of children. *Isenhour*, 350 N.C. at 607-08, 517 S.E.2d at 126. In its assessment of whether the actions of a crossing guard fall within the intended scope of the public duty doctrine or whether the guard's actions are meaningfully distinct from the law enforcement function in *Braswell*, this Court observed that the protective services of the crossing guard were limited as to time, place, beneficiaries, and purpose. *Id.* The city's provision of a school crossing guard did not equate to, and was meaningfully distinct from, the provision of police protection in *Braswell*, and therefore the public duty doctrine did not apply. *Id.*

In the instant case, the protective services provided at the courthouse through the County's contract with Burns Security are analogous to the police protection provided to the general public in *Braswell*. The rationale underlying the public duty doctrine is thus

WOOD v. GUILFORD CTY.

[355 N.C. 161 (2002)]

applicable. The courthouse security guards were employed to provide protective services, as was the crossing guard in *Isenhour*, but the group the guards were called upon to protect can hardly be characterized as "identifiable," as plaintiff argues. Rather, the protective services provided by Guilford County were intended to benefit the public at large, including those members of the public who worked at the courthouse. Specifically, the protective duty undertaken by the courthouse security guards was not limited in scope to the same degree as the crossing guards in *Isenhour* in respect to time (all day in the present case, as opposed to the specific time periods when children were going to or coming from school in *Isenhour*), place (a whole courthouse building here, as opposed to one narrow strip of road in *Isenhour*), intended beneficiaries (all people entering the building in the instant case, as opposed to schoolchildren only in *Isenhour*) and purpose (the general safeguarding of the public from a multitude of dangers at the courthouse in the instant case, as opposed to the singular purpose of safeguarding schoolchildren from the hazards of vehicular traffic coming from predictable directions in *Isenhour*).

As we have stated on numerous occasions, the public duty doctrine exists to prevent the imposition of an overwhelming burden of liability on governmental agencies with limited resources. *Stone*, 347 N.C. at 481, 495 S.E.2d at 716; *Braswell*, 330 N.C. at 370-71, 410 S.E.2d at 901. The doctrine retains limited vitality, as applied to local government, within the context of government's duty to protect the public generally, *see Southern Ry. Co. v. Mecklenburg Cty.*, 231 N.C. 148, 151, 56 S.E.2d 438, 440 (1949), which is necessarily "limited by the resources of the [local] community." *Florence*, 44 N.Y.2d at 198, 375 N.E.2d at 768.

[4] Having determined that the public duty doctrine bars plaintiff's civil action against the County, we next determine whether either of the recognized exceptions to the doctrine applies. In *Braswell*, we reiterated the example that most commonly gives rise to the special relationship exception to the public duty doctrine: the relationship between the police department and a state's witness or informant who has aided law enforcement officers. *Braswell*, 330 N.C. at 371, 410 S.E.2d at 902. Examining the special relationship exception in the context of the present case, we fail to see how, standing alone, plaintiff's status as an AOC employee working at the courthouse qualifies as "special" for purposes of the public duty doctrine. In other words, having security patrols at the courthouse where plaintiff worked did

not create a special relationship from which accrued greater protective benefits to plaintiff against violent crime than those afforded to the general public using the same courthouse. In any event, plaintiff, in her complaint, failed to allege the existence of a special relationship between her and the County. Accordingly, the special relationship exception to the public duty doctrine is inapplicable to the instant case.

The second recognized exception to the public duty doctrine examines whether a "special duty" arose to a particular individual. Plaintiff must show that an actual promise was made to create a special duty, that this promise was reasonably relied upon by plaintiff, and that this reliance was causally related to the injury ultimately suffered by plaintiff. See id. "[T]he 'special duty' exception to the general rule against liability of law enforcement officers for criminal acts of others is a very narrow one; it should be applied only when the promise, reliance, and causation are manifestly present." Id. at 372, 410 S.E.2d at 902.

In the present case, as already indicated, the County had a statutory responsibility to provide facilities for operation of the state's judicial system. See N.C.G.S. § 7A-302. The statute does not contain any language to suggest the creation of a special duty, however, whereby the County owed employees working in the courthouse greater protection than that owed to the general public using the courthouse. Moreover, the record is devoid of any allegation that the County made a promise to plaintiff to protect her against third-party criminal assaults. Accordingly, as the pleadings fail to allege the existence of a special duty, this exception to the doctrine is inapplicable.

**[5]** Plaintiff further alleges that the County waived its protection under the public duty doctrine. By hiring a security firm, plaintiff asserts, the County created a duty to courthouse tenants and their employees. This argument essentially restates in different terms the special duty exception to the public duty doctrine. In any event, by contracting with Burns Security, the County was merely executing the law enforcement duties required of it as a local governmental entity. See Southern Ry. Co., 231 N.C. at 151, 56 S.E.2d at 440. Accordingly, plaintiff's waiver argument is without merit.

As previously stated, the issue of whether a duty is owed to a claimant alleging negligence logically precedes the issue of a waiver of governmental immunity. As the County owed no duty to plaintiff

individually, the public duty doctrine operates to foreclose liability against the County on plaintiff's negligence claim. Consequently, we do not address governmental immunity or plaintiff's allegation of waiver of governmental immunity. We express no opinion as to plaintiff's negligence claim against Burns Security at this stage of the proceedings in the trial court.

Accordingly, the Court of Appeals' conclusion that the trial court properly exercised jurisdiction over plaintiff's civil claims against the County is affirmed. The Court of Appeals' determination that the public duty doctrine was inapplicable in the present case is reversed. This case is remanded to the Court of Appeals for further remand to the trial court for further proceedings consistent with this opinion.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.