Charah, LLC v. Sequoia Servs., LLC, 2019 NCBC 17.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

CHARAH, LLC,

        Plaintiff,

v.

SEQUOIA SERVICES LLC,

        Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 4815

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS**

1.    **THIS MATTER** is before the Court on Defendant Sequoia Services LLC's ("Sequoia") Motion to Dismiss for Failure to State a Claim (the "Motion"). (ECF No. 27.) The Motion seeks dismissal pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") of Plaintiff Charah, LLC's ("Charah" or the "Company") claims for tortious interference with contract and unfair or deceptive trade practices. For the reasons set forth herein, the Court **GRANTS** the Motion and dismisses the claims in question without prejudice. As a result, the Court denies Plaintiff's separate motion to extend the discovery period as moot.

*Moore and Van Allen PLLC, by Paul J. Peralta and Lindsey S. Frye, for Plaintiff.*

*Tuggle Duggins, P.A., by Denis E. Jacobson and Jeffrey S. Southerland, for Defendant.*

Robinson, Judge.

## I.    FACTUAL BACKGROUND

2.    The Court does not make findings of fact on a motion to dismiss pursuant to Rule 12(b)(6) but only recites those factual allegations that are relevant and necessary to the Court's determination of the Motion.

3.      Charah is a limited liability company organized under Kentucky law, with its principal place of business and headquarters in Jefferson County, Kentucky. (Am. Verified Compl. for Inj. Relief & Monetary Damages ¶ 2, ECF No. 3 ["Am. Compl."].) Charah provides management, operations, and marketing services in the coal combustion product, including coal ash, ("CCP"), industry. (Am. Compl. ¶ 7.) Charah provides services to entities maintaining coal ash sites in several states, including at a site operated by Duke Energy in Belew's Creek, North Carolina (the "Belew's Creek Site"). (Am. Compl. ¶ 7.)

4.      Former Defendant Stephen D. Carroll ("Carroll"), a resident of Greensboro, North Carolina, was employed by Charah from approximately December 2015 to September 2017. (*See* Am. Compl. ¶¶ 8, 37–38.)

5.      Sequoia is a limited liability company registered to do business in North Carolina, with its principal office in Greensboro, North Carolina. (Am. Compl. ¶ 4.) Sequoia performs work in North Carolina similar to that of Charah, including coal "ash pond dewatering, dam repair and remediation, plan services, construction, environmental services, and site preparation." (Am. Compl. ¶ 53.)

6.      When Carroll first joined Charah, he worked as a field engineer at the Belew's Creek Site. (Am. Compl. ¶ 8.) Prior to beginning his employment with Charah, Carroll signed an Employment, Confidentiality, Non-competition, Non-disclosure, and Non-solicitation Agreement (the "Employment Agreement"). (Am. Compl. ¶ 9; *see* Am. Compl. Ex. A.)

7.     Pursuant to section 7 of the Employment Agreement, Carroll agreed to be bound by certain restrictive covenants that would survive the termination of his employment with Charah.  (*See* Am. Compl. Ex. A, § 7.)  Specifically, section 7(b) provides that Carroll would receive access to Charah's confidential information in the course of his employment and obligates Carroll not to utilize, disclose, or assist others in obtaining Charah's confidential information during, or any time after the termination of, his employment. (Am. Compl. Ex. A., § 7(b).)

8.     The Employment Agreement also contains non-competition and non-solicitation provisions applicable following the termination of Carroll's employment.  (*See* Am. Compl. Ex A, § 7(e), (f).)  The non-competition provision restricts Carroll, for a twenty-four month period, from working, either directly or indirectly, for a competitor of Charah within a 250-mile radius of any Charah project site.  (Am. Compl. Ex. A, § 7(f).)  The non-solicitation provision restricts Carroll, for the same twenty-four month period, from soliciting, directly or indirectly, "business of the type being performed by the Company from any individual or entity which is then a customer of the Company" or from "induc[ing], solicit[ing], [or] enourag[ing] any . . . entity which is a customer . . . of the Company . . . to cease doing business with the Company[.]" (Am. Compl. Ex. A, § 7(e).)

9.     While employed with Charah, Carroll had access to Charah's confidential information and purported trade secrets, including: coal ash excavation, processing and removal techniques and methods, technical data regarding coal ash management and disposal, personnel data project requirements, labor rates, customer pricing

information, customer contracts, client-specific forms, client and project specific documents such as safety and project readiness documents, and subcontractor information including pricing, rates, and markup information. (Am. Compl. ¶¶ 30–31.) Charah uses this confidential and trade secret information not only to perform its work, but also to prepare bids for work with customers such as Duke Energy. (Am. Compl. ¶¶ 22, 32, 34.) Charah alleges that Carroll often participated in this bidding process. (Am. Compl. ¶ 35.)

10. Charah eventually installed Carroll in a senior project management role at the Belew's Creek Site, where Carroll utilized Charah's confidential and trade secret information in performing his work and worked closely with key Duke Energy personnel on a daily basis. (*See* Am. Compl. ¶¶ 21, 23, 26, 28.)

11. On August 4, 2017, Carroll gave Charah notice that he intended to terminate his employment, but continued to work for Charah for another five weeks. (Am. Compl. ¶¶ 37, 38.) Charah alleges that, during this five-week period, Carroll repeatedly used his work-issued laptop and personal electronic storage devices to save Charah's confidential and trade secret information without Charah's permission. (Am. Compl. ¶¶ 39, 44.) When he finally left Charah's employ, Carroll did not return any of the improperly saved information. (Am. Compl. ¶¶ 37–38, 47.)

12. Although the Amended Complaint does not provide a specific date, at some time after Carroll stopped working for Charah, "he began working for Charah's competitor, Sequoia." (Am. Compl. ¶ 51.) According to Charah, Sequoia had not previously performed any CCP-related work for Duke Energy. (Am. Compl. ¶ 52.) As

alleged, Sequoia enacted a scheme to hire Charah's employees and obtain Charah's confidential and trade secret information to compete with Charah in the CCP management and removal market in North Carolina. (*See* Am. Compl. ¶¶ 52, 54, 55.) Charah alleges that, as part of this plan, "Sequoia interviewed a number of Charah employees" and asked them to "divulge Charah['s] [c]onfidential [i]nformation and details regarding Charah['s] pricing for project bids." (Am. Compl. ¶ 55.)

13. The Amended Complaint does not allege that any of the interviewees disclosed any of Charah's confidential information, nor does it allege that Carroll was among those interviewed. However, Sequoia eventually hired Carroll to work at another Duke Energy CCP site, the Dan River Site, in a role similar to the one he performed for Charah at the Belew's Creek Site. (Am. Compl. ¶¶ 26, 51, 56–58.) The Belew's Creek Site is located approximately thirty miles from the Dan River Site. (Am. Compl. ¶ 57.)

14. According to Charah, "Sequoia hired Carroll specifically to grow its CCP business with Duke [Energy]." (Am. Compl. ¶ 52.) To that end, Charah alleges that "[d]uring his first week of work at Sequoia, and with Sequoia's encouragement, Carroll traveled to the Belew's Creek Site to reintroduce himself to the Duke [Energy] point of contact there as a Sequioa employee." (Am. Compl. ¶ 59.) Over the next few weeks, "at Sequoia's direction, Carroll provided substantial assistance" to Sequoia in preparing a bid for work with Duke Energy at the Belew's Creek Site, including communicating directly with Duke Energy personnel on behalf of Sequoia. (Am.

Compl. ¶ 60.) Although Charah had also bid on the project, Duke Energy awarded the project to Sequoia. (Am. Compl. ¶ 61.)

15. In addition to assisting Sequoia in its attempts to gain Duke Energy's business, Charah alleges that Carroll shared certain confidential and trade secret information with Sequioa at Sequoia's request. (*See* Am. Compl. ¶¶ 62–65.) Specifically, Charah alleges that "with knowledge of the [Employment] Agreement," Sequoia's Vice President, John Glover ("Glover"), "directed Carroll to provide Sequoia" with Charah's confidential and trade secret information, "including but not limited to Charah's Daily Report for work performed by Charah for Duke [Energy]." (Am. Compl. ¶ 62.) Carroll responded by e-mailing the Charah Daily Report to Glover on February 14, 2018. (Am. Compl. ¶ 63.)

16. Charah describes the Charah Daily Report as containing information for work Charah performed for Duke Energy and claims that the Charah Daily Report is "confidential information and a trade secret[.]" (Am. Compl. ¶ 64.) Charah alleges that "[o]n information and belief, Sequoia has used the confidential information and trade secrets disclosed to it by Carroll to further its relationship with and work for Duke [Energy,]" and that a few weeks later on March 9, 2018, Carroll again approached Duke Energy personnel to solicit work for Sequoia at the Dan River Site. (Am. Compl. ¶¶ 65, 66.)

17. One week later, on March 16, 2018, a Charah representative notified both Carroll and Sequoia in writing that Carroll was subject to the restrictive covenants contained in the Employment Agreement and provided both Carroll and Sequoia with

a copy of the agreement. (Am. Compl. ¶¶ 67, 68.) Although Charah alleges that it first provided Sequoia with a copy of the Employment Agreement on March 16, 2018, Charah alleges that "[a]t all relevant times" (without defining or otherwise describing what time period is meant), Sequioa knew of the Employment Agreement. (Am. Compl. ¶ 102; *see also* Am. Compl. ¶ 107.)

18. Even after providing Sequoia with notice and a copy of the Employment Agreement, Charah alleges, "[u]pon information and belief," that, as of the filing of the Amended Complaint, "Carroll continue[d] performing the same or similar tasks for Sequoia that he performed for Charah at the Belew's Creek Site, including managing, processing, and disposing of the same coal ash product for Duke [Energy] and participati[ng] in bidding for Duke [Energy] projects on behalf of Sequoia." (Am. Compl. ¶ 69.)

19. Charah contends that Sequoia tortiously, interfered with Charah's Employment Agreement with Carroll by "induc[ing] Carroll to breach the terms of the [Employment] Agreement by" (i) employing Carroll in violation of the non-compete provision, (ii) directing Carroll to solicit Duke Energy's business, including at the Belew's Creek Site, and (iii) directing Carroll to share with Sequoia Charah's confidential and trade secret information without Charah's consent. (Am. Compl. ¶¶ 103, 107, 108.) Charah also contends that Sequoia's actions constitute unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1. (Am. Compl. ¶ 112.)

## II. PROCEDURAL BACKGROUND

20. The Court sets forth here only those portions of the procedural history relevant to its determination of the Motion.

21. Charah initiated this action by filing its Verified Complaint for Injunctive Relief, and Monetary Damages on April 25, 2018 (the "Verified Complaint"). (ECF No. 5 ["Verified Compl."].) The Verified Complaint asserted claims against Carroll for (1) breach of contract, and (2) injunctive relief, (Verified Compl. 9–12); and against Sequoia for tortious interference with contract, (Verified Compl. 12).

22. Plaintiff filed the Amended Complaint on October 18, 2018, asserting claims against Carroll for (1) breach of contract, (2) violation of the North Carolina Trade Secrets Protection Act ("TSPA"), and (3) injunctive relief. (Am. Compl. 15–19.) The Amended Complaint also asserts claims against Sequoia for (1) tortious interference with contract, and (2) unfair or deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1. (Am. Compl. 19–21.)

23. On September 6, 2018, the then-presiding Superior Court Judge entered a Consent Injunction, Order, and Decree against Carroll, which did not involve Sequoia. (*See* ECF No. 36.) At no time has Charah moved the Court for injunctive relief as to Sequoia.

24. On September 10, 2018, Charah voluntarily dismissed without prejudice its claims for breach of contract, violations of the TSPA, and for injunctive relief, each alleged solely against Carroll. (*See* ECF No. 21.)

25. This action was designated as a mandatory complex business case on November 7, 2018 and assigned to the undersigned the same day. (ECF Nos. 1, 2.)

26. Following designation, Sequoia filed the Motion on November 16, 2018. The Motion has been fully briefed, and the Court held a hearing on the Motion on January 11, 2019 at which Charah and Sequoia were represented by counsel.

27. On February 28, 2019, Charah filed a motion to extend the deadline for the completion of discovery in this action by one month (from March 1, 2019 to April 1, 2019) (the "Discovery Motion"). (ECF No. 47.) Sequoia filed a brief in opposition to the Discovery Motion, and Charah filed a reply in support. (ECF Nos. 49, 50.)

28. The Motion and the Discovery Motion are now ripe for resolution.

### III. LEGAL STANDARD

29. In ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the Court reviews the allegations of the Amended Complaint in the light most favorable to Plaintiff. The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). The Court construes the Amended Complaint liberally and accepts all well-pleaded factual allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). The Court is not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

*Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005).

30. Our Supreme Court has noted that "[i]t is well-established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the [Amended Complaint] on its face reveals that no law supports the . . . claim; (2) the [Amended Complaint] on its face reveals the absence of facts sufficient to make a good claim; or (3) the [Amended Complaint] discloses some fact that necessarily defeats the . . . claim.'" *Corwin v. British Am. Tobacco PLC*, 821 S.E.2d 729, 736–37 (N.C. 2018) (quoting *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)). This standard of review for Rule 12(b)(6) is the standard our Supreme Court "uses routinely . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 737 n.7.

## IV. ANALYSIS

### A. Tortious Interference with Contract

31. To state a claim for tortious interference with contract, the Amended Complaint must allege that:

> (1) a valid contract [exists] between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; [and] (5) resulting in actual damage to plaintiff.

*United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988). As this Court has previously noted, "[t]he pleading standards for a tortious interference with contract claim are strict." *Urquhart v. Trenkelbach*, 2017 NCBC LEXIS 12, at

\*15 (N.C. Super. Ct. Feb. 8, 2017); *see also Wells Fargo Ins. Servs. USA v. Link*, 2018 NCBC LEXIS 42, at \*47 (N.C. Super. Ct. May 8, 2018); *Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp.*, 2017 NCBC LEXIS 27, at \*16 (N.C. Super. Ct. Mar. 27, 2017).

32.    Sequoia contends that Charah fails to adequately allege facts supporting each of the first four elements of its claim for tortious interference with contract. (Br. Supp. Def.'s Mot. to Dismiss 5, ECF No. 28 ["Br. Supp."].)   Because the Court concludes that Charah has failed to adequately plead the elements of knowledge and inducement, the Court need not and does not address Sequoia's arguments relating to the validity of the Employment Agreement or justification.

33.    Sequoia contends that Charah has not alleged facts sufficient to satisfy Charah's pleading requirement that Sequoia knew of Carroll's Employment Contract. (*See* Br. Supp. 9; Reply Supp. Def.'s Mot. to Dismiss 8–9, ECF No. 39 ["Reply"].) Specifically, Sequoia argues that, apart from several conclusory allegations that Sequoia had knowledge of the Employment Agreement, the only alleged fact supporting this conclusion is Charah's allegation that it sent Sequoia a copy of the Employment Agreement on March 16, 2018.   (Reply 9; *see also* Br. Supp. 9.) Knowledge of the Employment Agreement on and after March 16, 2018, Sequoia argues, cannot support Charah's claim for tortious interference with contract because Charah does not allege that on or after that date Sequoia intentionally induced Carroll to breach the Employment Agreement.  (*See* Br. Supp. 9; Reply 9.)

34.     "[W]hen alleging a claim for tortious interference with contract, it is not enough to broadly allege that the defendant[] had 'knowledge of the contract[]'; rather, a complaint must contain 'facts sufficient to make a good claim' that the defendant[] knew of the contract[] at issue." *Salon Blu, Inc. v. Salon Lofts Grp., LLC*, 2018 NCBC LEXIS 72, at *12 (N.C. Super. Ct. July 16, 2018) (quoting *Krawiec v. Manly*, 370 N.C. 602, 606–07, 811 S.E.2d 542, 546–47 (2018)); *see also Childress v. Abeles*, 240 N.C. 667, 674, 84 S.E.2d 176, 182 (1954) (stating that a defendant has "knowledge of the contract within the meaning of the second element of [tortious interference with contract] if he knows the facts which give rise to the plaintiff's contractual right against the third person").

35.     Charah alleges that: (i) "[a]t all relevant times, and no later than March 16, 2018, Sequoia knew of the [Employment] Agreement and Carroll's continuing obligations to Charah[,]" (Am. Compl. ¶ 102); (ii) "with knowledge of the [Employment] Agreement," Glover directed Carroll, on an unspecified date, to provide Sequoia with Carah's confidential information and trade secrets, which Carroll then did on February 14, 2018, (Am. Compl. ¶¶ 62–63); and (iii) "Sequoia employed Carroll despite Sequoia's knowledge of the [Employment] Agreement[,]" (Am. Compl. ¶ 107). These general allegations of knowledge are not sufficient to "make a good claim" that Sequoia knew of the Employment Agreement prior to March 16, 2018 as they do not allege facts supporting the knowledge allegations. *Krawiec*, 370 N.C. at 607, 811 S.E.2d at 547; *Salon Blu*, 2018 NCBC LEXIS 72, at *12.

36. At the hearing on the Motion, counsel for Charah argued that the Court should follow *Reichhold Chemicals, Inc. v. Goel*, 146 N.C. App. 137, 150, 555 S.E.2d 281, 290 (2001), and conclude that Sequoia's alleged knowledge of the prior employment relationship between Charah and Carroll is sufficient to satisfy the knowledge element. *Reichhold Chemicals* is, however, easily distinguishable from the instant case and thus not controlling here.

37. In *Reichhold Chemicals*, Goel, an employee of Reichhold Chemicals, Inc. ("Reichhold"), entered into a consulting agreement with Imperial Adhesives, Inc. ("Imperial") but did not inform Reichhold of the agreement. *Id.* at 142–43, 555 S.E.2d at 285. Thereafter, Reichhold filed suit against Imperial alleging that Goel had misappropriated Reichhold's trade secrets and shared them with Imperial. *Id.* at 144, 555 S.E.2d at 286. In response, Imperial terminated its consulting agreement with Goel. *Id.* Goel thereafter counterclaimed against Reichhold for interfering with his consulting agreement with Imperial. *Id.* at 141, 555 S.E.2d at 284. The Court of Appeals held that "insofar as [Reichhold] sought to disrupt the relationship between [Goel] and Imperial, [Reichhold's] knowledge of the relationship satisfies the knowledge requirement of tortious interference." *Id.* at 151, 555 S.E.2d at 290. The Court of Appeals analogized Goel's claim to one for tortious interference with prospective economic advantage. *See id.* ("Inducing a person not to enter into a contract is as much a tort as interference with established contract. The fact that [Reichhold] may not have known, at the time it filed suit against Imperial, that [Goel]

had already signed the consulting agreement with Imperial cannot shield [Reichhold] from liability." (internal citation omitted)).

38. Here, Sequoia's alleged interference with the Employment Contract was not aimed at disrupting an existing business relationship between Carroll and Charah. The Amended Complaint does not allege that Sequoia induced Carroll to terminate his employment with Charah, and the allegations suggest that Carroll terminated his employment with Charah well in advance of his start date with Sequoia. (*See* Am. ¶¶ 37–38, 51, 54–55.) Unlike in *Reichhold Chemicals*, Charah's claim for tortious interference with contract bears no relationship to a claim for tortious interference with prospective economic advantage. The Court therefore finds *Reichhold Chemicals* distinguishable on its facts and unpersuasive in its reasoning as applied to the instant case.

39. Charah does, however, sufficiently allege facts supporting the conclusion that as of March 16, 2018, Sequoia knew of the Employment Agreement. On March 16, 2018, Charah delivered a written message to Sequoia informing Sequoia that it was employing Carroll in violation of the Employment Agreement and enclosed a copy of the Employment Agreement for Sequoia's review. (Am. Compl. ¶ 68.) The question then becomes whether Charah has adequately alleged that Sequoia intentionally induced Carroll to breach the Employment Agreement on or after March 16, 2018.

40. This Court has interpreted "induce" to mean "purposeful conduct," "active persuasion, request, or petition." *KRG New Hill Place, LLC v. Springs Inv'rs, LLC*, 2015 NCBC LEXIS 20, at *14, 15 (N.C. Super. Ct. Feb. 27, 2015) (quoting *Inland Am.*

*Winston Hotels, Inc. v. Crockett*, 212 N.C. App. 349, 254, 712 S.E.2d 366, 369–70 (2011)). Although this Court previously considered the interpretation of "induce" in the context of a claim for tortious interference with prospective economic advantage, "there is nothing about the [C]ourt's analysis of that word's meaning [in that type of claim] that makes it inapplicable to this case." *Id.* at \*15–16.

41. Viewing the allegations of the Amended Complaint in the light most favorable to Charah, it appears that Carroll is alleged to have breached the Employment Agreement after March 16, 2018 in two ways: (i) by remaining employed with Sequoia and working at the Belew's Creek Site, and (ii) by continuing to "participat[e] in bidding for Duke [Energy] projects on behalf of Sequoia." (Am. Compl. ¶ 69.) The Court concludes that these allegations are insufficient to satisfy the inducement element of a tortious interference with contract claim. At least as alleged here, Sequoia's mere failure to terminate Carroll's employment after March 16, 2018, without more, does not equate to the sort of "purposeful conduct" or "active persuasion" necessary for inducement. Furthermore, the allegation that, after March 16, 2018, Carroll continued to participate in bidding for Duke Energy work as a Sequoia employee is devoid of specific allegations as to exactly what Carroll did or that Sequoia intentionally induced Carroll to do so.

42. The Court concludes that the Amended Complaint does not sufficiently allege that Sequioa intentionally induced Carroll to breach the Employment Agreement on or after March 16, 2018. Accordingly, Charah has not sufficiently

alleged all of the elements of its claim for tortious interference with contract, and the claim is properly dismissed.

43. At the hearing on the Motion, Charah's counsel forecast evidence obtained during discovery suggesting that Sequoia may have known of the Employment Agreement prior to hiring Carroll. Although these representations are not properly before the Court on a motion pursuant to Rule 12(b)(6), on the basis of these representations, the Court concludes, in its discretion, that Charah's claim for tortious interference with contract should be dismissed without prejudice. *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191–92, 749 S.E.2d 289, 292 (2013) ("The decision to dismiss an action with or without prejudice is in the discretion of the trial court . . . . [T]he party whose claim is being dismissed has the burden to convince the court that the party deserves a second chance[.]" (internal citations and quotation marks omitted)).

**B.    Unfair and Deceptive Trade Practices**

44. Charah premises its claim for unfair and deceptive trade practices ("UDTP") on the same allegations supporting its claim for tortious interference with contract. (*Compare* Am. Compl. ¶ 103, *with* Am. Compl. ¶ 112.) Although a claim for tortious interference with contract may form the basis of a UDTP claim, *see Bldg. Ctr., Inc. v. Carter Lumber, Inc.*, 2016 NCBC LEXIS 79, at *30 (N.C. Super. Ct. Oct. 21, 2016), having concluded that Charah's tortious interference claim fails at the pleading stage, the Court also concludes that this claim cannot support Charah's UDTP claim, *Salon Blu,* 2018 NCBC LEXIS 72, at *19–20 (dismissing UDTP claim

when premised on claim for tortious interference with contract that did not survive motion to dismiss).

45. In its response brief, Charah also cites to opinions from this Court holding that claims for trade secret misappropriation may support a UDTP claim. (Charah, LLC's Resp. Opp'n to Def.'s Mot. to Dismiss 19, ECF No. 37 (citing *E-Ntech Indep. Testing Servs. v. Air Masters, Inc.*, 2017 NCBC LEXIS 2, at *37–38 (N.C. Super. Ct. Jan. 5, 2017); *S. Fastening Sys. v. Grabber Constr. Prods.*, 2015 NCBC LEXIS 42, at *28–29 (N.C. Super. Ct. Apr. 28, 2015)).) However, Charah has not brought a claim for trade secret misappropriation against Sequioa, and Charah has voluntarily dismissed its claim for trade secret misappropriation against Carroll. (*See* ECF No. 21.)

46. Regardless, the Amended Complaint contains only one allegation that Sequioa acquired or used Charah's purported trade secrets. Charah alleges that on February 14, 2018, at the direction of Glover, Carroll e-mailed to Glover the Charah Daily Report, which contained information on work Charah performed for Duke Energy and was "confidential and a trade secret[.]" (Am. Compl. ¶¶ 62–65.) Notwithstanding the fact that Charah has not brought a trade secret misappropriation claim against Sequoia, the Court concludes that the allegations concerning the Charah Daily Report are not sufficiently particular to identify the purported trade secret. *See Krawiec*, 370 N.C. at 609–10, 811 S.E.2d at 547–48. Although Charah identifies the report by name and alleges it includes information concerning work for Duke Energy, Charah makes no allegations as to what the

information is or why it is deserving of trade secret protection. Accordingly, Carroll's alleged disclosure to Sequoia of the Charah Daily Report does not, by itself, satisfy the pleading requirements of a UDTP claim.

47. Therefore, Charah's UDTP claim is properly dismissed. However, because a valid claim for tortious interference with contract may support a UDTP claim, and because the Court has dismissed Charah's tortious interference with claim without prejudice, the Court concludes that Charah's claim for UDTP should also be dismissed without prejudice.

## V. CONCLUSION

48. **THEREFORE**, for the foregoing reasons, the Court hereby **GRANTS** the Motion and the Amended Complaint is **DISMISSED without prejudice**. As a result of the Court's dismissal of all claims included in the Amended Complaint, the Discovery Motion filed by Plaintiff seeking an extension of the discovery period is **DENIED as moot**.

**SO ORDERED**, this the 11th day of March, 2019.

/s/ Michael L. Robinson

Michael L. Robinson
Special Superior Court Judge
for Complex Business Cases