Packard v. SEI Priv. Tr. Co., 2025 NCBC 26.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CV052981-590

ARTHUR PACKARD and BETH
PACKARD,

     Plaintiffs,

v.

SEI PRIVATE TRUST COMPANY,

     Defendant.

**ORDER AND OPINION ON
DEFENDANT'S MOTION TO DISMISS**

     **THIS MATTER** is before the Court on Defendant SEI Private Trust Company's ("SEI") Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Rule 12(b)(6) ("Motion to Dismiss" or the "Motion," ECF No. 18).

     **THE COURT**, having considered the Motion to Dismiss, the parties' briefs, the arguments of counsel, the applicable law, and all appropriate matters of record, **CONCLUDES** that SEI's Motion to Dismiss should be **DENIED** as set forth below.

*Vann Law Firm, P.A. by Christopher M. Vann, for Plaintiffs Arthur Packard and Beth Packard.*

*Rayburn, Cooper & Durham, P.A., by Lauren J. Schantz and Ross R. Fulton, for Defendant SEI Private Trust Company.*

Davis, Judge.

## INTRODUCTION

1.    This case involves alleged errors in connection with a managed investment account, but the resolution of the present Motion hinges on a procedural issue. Specifically, that issue concerns whether a court that is ruling upon a motion to

dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure can consider documents that were neither attached to the complaint nor referenced therein but were instead incorporated by reference into other documents that *were* attached to the Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

2. The Court does not make findings of fact in resolving a motion to dismiss under Rule 12(b)(6) and instead recites those facts contained in the complaint that are relevant to the Court's determination of the motion. *See, e.g., Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *11 (N.C. Super. Ct. July 12, 2017).

3. SEI is a Pennsylvania corporation with its principal place of business in Montgomery County, Pennsylvania. SEI conducts extensive business in North Carolina. (Am. Compl. ¶ 2, ECF No. 15.)

4. In 2021, Plaintiffs Arthur and Beth Packard (collectively, the "Packards" or "Plaintiffs") became investment clients of a company called GCG Wealth Management ("GCG Wealth"). (Am. Compl. ¶ 3.) The Packards and GCG Wealth entered into an Account Application for Managed Account Solutions (the "Account Application") with SEI on 1 March 2021. (Am. Compl. ¶ 3, Ex. 1.)

5. As part of the Account Application, the Packards appointed Jonathan Malone and Michael McFadden of GCG Wealth as their investment advisors. (Am. Compl. Ex. 1 § 2.) Under the terms of the Account Application, the Packards would be "co-advised by [their] Investment Advisor and SEI Investments Management

Corporation (SIMC) as detailed in the Investment Management Agreement." (Ex. 1 § 5.)

6. Approximately eight months later, on 10 November 2021, the Packards executed SEI's Enhanced Advisor Services: Account Transfer Form ("Transfer Form"), directing an in-kind transfer of $820,367.97 in securities from Plaintiffs' Merrill Lynch account to their account held by SEI. (Am. Compl. ¶ 4, Ex. 2.)[1]

7. The terms of the Account Application provided that "[a]ll securities transferred in-kind at initial funding will be sold (or included, if appropriate) when allocated to your strategy, unless specifically indicated otherwise in the Securities Not to Be Sold section." (Ex. 1 at 6.) In this case, the "Securities Not to Be Sold" section was left blank. (Ex. 1 at 21.)

8. The Transfer Form provided for two types of transfers, stating as follows:

> **Full Account Liquidation** (Complete Sections 4 and 6) If assets have already been liquidated, indicate settlement date: _____. Cash will be invested according to the investment instructions submitted on the Account Application (or, for cash being transferred after the initial funding has taken place, per further instructions submitted separately to the advisor; if no instructions are submitted, SEI will invest cash per standard procedures).
>
> **OR**
>
> **In-Kind Transfer** (Select one and complete Sections 4, 5, and 6) Cash associated with the in-kind transfer will be invested according to the investment instructions submitted on the Account Application (or, for cash being transferred after the initial funding has taken place, per further instructions submitted separately by the Advisor; if no instructions are submitted, SEI will invest the cash per standard procedures).

---

[1] The Amended Complaint is unclear as to whether the transfer made on 10 November 2021 constituted the initial funding for the account or subsequent funding.

(Ex. 2 § 3.)

9.  On the Transfer Form, the Packards elected an in-kind transfer of the full account.  (Ex. 2 § 3.)  Plaintiffs allege that they intended the transfer to be in-kind in order to prevent any ensuing tax liability and that their desire in this regard was understood by SEI.  (Am. Compl. ¶ 4.)

10.  SEI proceeded to liquidate the transferred securities on 19 November 2021, creating a gain of $349,974.09.  This gain, however, resulted in a federal and state tax liability being imposed on the Packards in the amount of $98,000 along with $3,000 in penalties.  (Am. Compl. ¶ 5.)

11.  Prior to taking this action, SEI did not notify the Packards that it would be liquidating their securities.  (Am. Compl. ¶ 6.)  Accordingly, the Packards first became aware of the tax liability in October 2022 when they received their draft income tax returns.  (Am. Compl. ¶ 7.)

12.  When Plaintiffs learned of the transaction, they contacted their Investment Advisors at Castle Wealth Group, LLC ("Castle Wealth").[2]  (Am. Compl. ¶ 9).  On 15 November 2022, Castle Wealth submitted (on the Packards' behalf) a form of SEI's titled "Advisor Error Correction and Indemnification Form" ("Error Form") seeking to undo the liquidation so as to eliminate the tax liability.  (Am. Compl. ¶ 9, Ex. 3.)

13.  The Amended Complaint asserts that during the relevant time period SEI had a policy to "reverse or undo trades if the request [wa]s made within one year of

---

[2] According to the Amended Complaint, Plaintiffs' account was transferred from GCG Wealth to Castle Wealth when Plaintiffs' investment advisors formed Castle Wealth.  Castle Wealth was established at some point between the signing of the Account Application on 1 March 2021 and the Packards' notification of the liquidation in 2022.  (Am. Compl. ¶ 8.)

the trade." (Am. Compl. ¶ 10.) However, SEI refused to reverse the liquidation of Plaintiffs' account. (Am. Compl. ¶ 11.)

14. Plaintiffs initiated this action by filing a Complaint in Mecklenburg County Superior Court on 14 November 2024. (ECF No. 3.)

15. SEI filed an original Motion to Dismiss on 30 December 2024. (ECF No. 5.)

16. This case was designated as a mandatory complex business case on 31 December 2024 and assigned to the Honorable Julianna Theall Earp. (ECF No. 1.)

17. On 12 February 2025, Plaintiffs filed an Amended Complaint. (Am. Compl.) The Amended Complaint asserted claims against SEI for breach of contract and breach of fiduciary duty. (Am. Compl. ¶¶ 13–23.)

18. As a result of the filing of the Amended Complaint, the Court denied SEI's first Motion to Dismiss as moot. (Or. on Def.'s Mot. to Dismiss, ECF No. 17.)

19. SEI filed the present Motion on 5 March 2025 seeking dismissal of both claims in the Amended Complaint pursuant to Rule 12(b)(6). (ECF No. 18.)

20. The case was reassigned to the undersigned on 5 May 2025. (ECF No. 31.)

21. The Court held a hearing on the Motion on 16 May 2025 at which all parties were represented by counsel.

22. The Motion to Dismiss has been fully briefed and is now ripe for resolution.

## LEGAL STANDARD

23. In ruling on a motion to dismiss under Rule 12(b)(6), the Court must determine whether "as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some recognized legal theory." *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus., Inc.*,

336 N.C. 438, 442 (1994) (cleaned up). The Court must view the allegations in the complaint "in the light most favorable to the non-moving party." *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017) (cleaned up).

24. "It is well established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cnty.*, 355 N.C. 161, 166 (2002)).

## ANALYSIS

25. SEI makes several arguments in support of its Motion to Dismiss, which are based on the contents of five documents.

26. Three of the five documents were attached to Plaintiffs' Amended Complaint: (1) the Account Application (which was signed by the Packards); (2) the Transfer Form (which was signed by the Packards); and (3) the Error Form (which was signed by Malone and McFadden on the Packards' behalf).

27. The two remaining documents relied upon by SEI in support of its Motion to Dismiss are: (1) a document titled "Custody Agreement Version 2.4.20.1" ("Custody Agreement"); and (2) a document titled "Investment Management Agreement Version 2.4.20.1" ("Management Agreement").

28. In addressing a Rule 12(b)(6) motion, a court may consider any documents "attached, specifically referred to, or incorporated by reference in the complaint"

without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (citation omitted). Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (citing *Robertson v. Boyd*, 88 N.C. App. 437, 441 (1988)).

29.     However, consideration of any other types of documents on a Rule 12(b)(6) motion is improper, as "[p]erhaps the most fundamental concept of motions practice under Rule 12 is that evidence outside the pleadings cannot be considered in determining whether the complaint states a claim on which relief can be granted." *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *10 (N.C. Super. Ct. June 19, 2019) (cleaned up).

30.     Here, because the Account Application, Transfer Form, and Error Form were all attached to the Amended Complaint, it is clearly proper for the Court to consider those three documents in ruling on the Motion to Dismiss.  However, the Custody Agreement and the Management Agreement were neither referenced in the Amended Complaint nor attached to it.  Instead, these two documents were attached to SEI's original Motion to Dismiss.  (ECF Nos. 7.4, 7.5.)  Moreover, neither of these documents was signed by Plaintiffs (or their investment advisors).  For these reasons, Plaintiffs assert that the Court should not consider either the Custody Agreement or the Management Agreement.

31. In response, SEI argues that these two documents can, in fact, be considered because they were incorporated by reference in the Account Application. In making this argument, SEI is referring to one sentence in small font on page twenty-four of the twenty-seven-page Account Application stating that "[t]he terms of the Custody Agreement and the . . . Management Agreement . . . are incorporated herein by reference." (Account Application at 24.)

32. Neither Plaintiffs' brief nor the Court's own research has disclosed any cases from North Carolina courts allowing consideration on a Rule 12(b)(6) motion of documents merely incorporated by reference into other documents.

33. The Court notes that several courts in other jurisdictions have expressed reservations about allowing documents to be considered on a motion to dismiss under this theory. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (refusing to consider certain unsigned Codes to which the complaint did not refer even though it appeared that the Codes had been incorporated into the contract at issue); *FDIC as Receiver of Wash. Mut. Bank. v. Mortg. Link, Inc.*, 2024 U.S. Dist. LEXIS 107550, at *15–17 (C.D. Cal. May 2, 2024) (declining to consider challenged documents despite defendant's argument that the documents were "incorporated by reference into the Settlement Agreement, and thereby incorporated into Plaintiff's Complaint because the Settlement Agreement was expressly incorporated into the Complaint"); *Fallon v. Camping World RV Sales LLC*, 2020 Mass. Super. 3390, at *7 (Mass. Super. Ct. Aug. 13, 2020) (declining to consider a warranty guide attached to

the motion to dismiss when it was unclear from the complaint "whether the [plaintiffs] received the Guide and if so, when").

34.     North Carolina courts have been reluctant to broaden the universe of documents that can be considered on a Rule 12(b)(6) motion without converting it to a motion for summary judgment. *See, e.g., Bucci v. Burns*, 2018 NCBC LEXIS 37, at *10 (N.C. Super. Ct. Apr. 25, 2018) (refusing to consider corporate formation documents produced by defendant because these documents were "[n]either the subject of the amended complaint or referred to by it").

35.     The Court's decision not to consider the Custody Agreement or Management Agreement here is also based on considerations of authenticity. It is presently unclear whether the versions of these two documents submitted by SEI are substantively identical to the ones presumably given to Plaintiffs at the time the Account Application was signed. Indeed, SEI has implicitly acknowledged the need to address authenticity concerns by filing an affidavit from Marianne Dallas, a project manager for SEI, who testified regarding the authenticity of these documents.

36.     It is axiomatic that this Court cannot consider such an affidavit at the Rule 12(b)(6) stage without converting the motion into a summary judgment motion. *See, e.g., DeArmon v. B. Mears Corp.*, 312 N.C. 749, 758 (1985) (reviewing trial court's order on motion to dismiss under summary judgment standard because the court considered affidavits and other extraneous documents showing ownership of vehicle at issue); *see also Horne v. Town of Blowing Rock*, 223 N.C. App. 26, 30 (2012) ("Our

case law has consistently treated submission of affidavits as a matter outside the pleadings.").

37. The Court declines to convert the present Motion to Dismiss into a motion for summary judgment based on its belief that the relevance and admissibility of the Custody Agreement and Management Agreement are appropriate subjects for discovery in this case.

38. Having determined that consideration of the Custody Agreement and Management Agreement would be improper in ruling on the present Motion, the only remaining question is whether SEI is entitled to dismissal of the Packards' Amended Complaint even without consideration of those two documents.

39. After careful consideration of SEI's arguments, the Court concludes that the granting of SEI's Motion would be improper on the present record.

40. The provisions of both the Custody Agreement and the Management Agreement are integral to SEI's arguments and are cited (and quoted) extensively throughout SEI's briefs. The Management Agreement, among other things, purports to delineate the respective roles and responsibilities of the Packards' investment advisors and SEI as well as how the Packards' account was to be funded. The Custody Agreement purports to place limits on SEI's responsibilities for the Packards' account and to establish a deadline governing requests for the reversal of SEI's transactions. Each of these topics is a matter of dispute between the parties in their respective briefs.

41. Rather than trying to disentangle those portions of SEI's arguments that rely on the Custody Agreement and Management Agreement from those portions that do not, the Court deems it a more appropriate use of its resources to instead wait until a later stage of this litigation at which time SEI will have a full and fair opportunity to reassert these same arguments (along with any new ones) supported by a more expansive record.

42. Moreover, the Custody Agreement and Management Agreement both contain choice of law provisions stating that any claims arising under these documents shall be controlled by Pennsylvania law. The three documents attached to Plaintiffs' Amended Complaint, conversely, lack any choice of law provisions. Therefore, it would be premature for the Court to engage in an analysis of the legal validity of the Packards' claims until it is clear which state's substantive law applies.

## CONCLUSION

43. For the reasons set forth above, SEI's Motion to Dismiss is **DENIED**.

**SO ORDERED**, this the 10th day of June 2025.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge
for Complex Business Cases