Cranford v. Hintz, 2026 NCBC 33.

STATE OF NORTH CAROLINA

ROWAN COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV003380-790

LINDA S. CRANFORD, individually
and as a derivative member of
STEELE FAMILY FARMS, LLC,

Plaintiff,

v.

MARY M. HINTZ; CARI M.
MCCACHREN-SHAH; WESLEY
STEELE; and KRISTEN M.
RAYMER,

Defendants,

STEELE FAMILY FARMS, LLC,

Nominal
Defendant.

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS TO
DISMISS**

1.      **THIS MATTER** is before the Court on the 29 December 2025 filing of

*Defendants Mary M. Hintz, Cari M. McCachren-Shah, and Kristen M. Raymer's*

*Motion to Dismiss Amended Complaint* (the Sisters' Motion), (ECF No. 15 [Sister

Mot.]), and the 20 January 2026 filing of *Defendant Wesley Steele's Motion to Dismiss*

*Plaintiff's Amended Complaint* (the Steele Motion, and together with the Sisters'

Motion, the Motions),  (ECF No. 23 [Steele Mot.]).

2.      For the reasons set forth herein, the Court **GRANTS in part** and

**DENIES in part** the Sisters' Motion and the Steele Motion.

*Hartsell & Williams, P.A. by Andrew T. Cornelius; Austin Entwistle, III;*
*and Dylan A. Rose, for Plaintiff Linda S. Cranford, individually and as*
*a derivative member of Steele Family Farms, LLC.*

*Ward and Smith, P.A. by Bradley Evans for Defendants Mary M. Hintz, Cari M. McCachren-Shah, and Kristen M. Raymer.*

*Bell, Davis & Pitt, P.A. by Bradley C. Friesen and Carson L. Pace for Defendant Wesley Steele.*

## I. INTRODUCTION

3. This action arises out of a controversy surrounding a family farm and related properties held by Steele Family Farms, LLC (the Company). Plaintiff Linda S. Cranford (Plaintiff) originally[1] brought seven causes of action against Defendants Mary M. Hintz, Cari. M. McCachren-Shah, Kristen M. Raymer (collectively, the Sisters), and Wesley Steele (Steele, and together with the Sisters, Defendants). These causes of action are as follows: (1) breach of fiduciary duties owed to Plaintiff and the Company; (2) a cause of action for Unfair and Deceptive Trade Practices (UDTP) ; (3) negligence in the performance of duties owed to the Company; (4) a claim to appoint a receiver pursuant to N.C.G.S. § 1-507.24; (5) dissolution of the Company pursuant to N.C.G.S. § 57D-2-20(c); (6) dissolution of the Company pursuant to N.C.G.S. § 57D-6-02(c); and (7) for a declaratory judgment to modify, set aside and/or interpret sections 12.4, 13.1, and 13.2 of the Operating Agreement.

## II. FACTUAL BACKGROUND

4. The Court does not make findings of fact when ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure (Rule 12(b)(6)) and only recites those factual allegations found in the complaint or in documents attached to, referred to, or otherwise incorporated by reference in the

---

[1] As explained below, the second cause of action for Unfair and Deceptive Trade Practices was later voluntarily dismissed by Plaintiff.

complaint. *See, e.g., Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *11 (N.C. Super. Ct. July 12, 2017).

### A.     <u>The Parties</u>

5.     Plaintiff is a citizen and resident of Rowan County, North Carolina. (Am. Compl. ¶ 1, ECF No. 13.)

6.     Defendant Mary M. Hintz is a citizen and resident of Wake County, North Carolina.  (Am. Compl. ¶ 3.)

7.     Defendant Cari M. McCachren-Shah is a citizen and resident of Montgomery County, Maryland.  (Am. Compl. ¶ 5.)

8.     Defendant Kristen M. Raymer is a citizen and resident of Alexandria, Virginia.  (Am. Compl. ¶ 6.)

9.     Defendant Steele is a citizen and resident of Rowan County, North Carolina.  (Am. Compl. ¶ 4.)

10.     The Company is a North Carolina limited liability company with a principal address of 765 Bentwood Lane, Rowan County, North Carolina.  (Am. Compl. ¶ 2.)

### B.     <u>The Company</u>

11.     The Company was formed on 16 December 2010, when the parties' counsel filed Limited Liability Company Articles of Organization (the Articles) with the North Carolina Secretary of State.  (Am. Compl. Ex. B, ECF No. 19.)  The Articles identify Plaintiff as its initial registered agent.  (Am. Compl. Ex. B.)

12.     Five days later, on 21 December 2010, Defendants and Plaintiff executed the Operating Agreement of Steele Family Farms (the Operating Agreement).  (Defs.' Mary M. Hintz, Cari M. Mccachren-Shah, and Kristen M. Rayner's Mem. Law Supp. Mot. Dism. Am. Compl., [Sisters' Supp. Br.], Ex. 1 [Op. Agreement], ECF No. 17.1.) The Operating Agreement identifies Plaintiff and Defendants as members of the Company, (Op. Agreement § 1.4; *see also* Am. Compl. ¶ 7), and further states that Plaintiff and Steele each hold a one-third (1/3) interest in the Company, while the Sisters each hold a one-ninth (1/9) interest in the Company.  (Op. Agreement § 7.1; *see also* Am. Compl. ¶ 9.)

13.     The Operating Agreement provides that:

PURPOSES

The purposes of the Company shall be to hold family investments, including farms and real estate, and to engage in any and all business activities related or incidental thereto, and to engage in any activity that may be lawfully engaged in by a limited liability company.

(Op. Agreement Art. 2.)

14.     Article Thirteen of the Operating Agreement further provides relevant provisions that are central to Plaintiff's claims, (Am. Compl. ¶¶ 45–48):

DISSOLUTION AND TERMINATION OF THE COMPANY

Section 13.1. *Right to Dissolve the Company*. No individual Member shall have the right to cause a dissolution of the Company.

Section 13.2. *Events of Dissolution*. The Company shall be dissolved (a) upon the mutual consent of all members; or (b) upon the sale by the Company of all its right, title, and interest in and to all or substantially all its assets and the receipt by the Company of the purchase price in full.

(Op. Agreement §§ 13.1–.2.)

15.     Further, Section 12.4 of the Operating Agreement states in pertinent part:

Section 12.4. *Death or Bankruptcy*. Upon the death or bankruptcy of a Member, the Company shall have the option of purchasing such deceased or bankrupt Member's entire interest in the Company for an amount equal to such deceased or bankrupt Member's capital account balance at the time of his death or bankruptcy. The Company shall make such election only with the consent of all Members other than the deceased or bankrupt Member or his successors. Notice of the exercise of such option must be provided to the deceased or bankrupt Member or his successors within sixty (60) days of the other Members learning of such event. The purchase price must be tendered to the deceased or bankrupt Member or his successors within thirty (30) days after the end of such sixty-day period. For purposes of this Section, "bankruptcy" shall mean the commencement of proceedings by or against a member under any insolvency, bankruptcy, creditor adjustment, or debtor rehabilitation law, which proceeding is not dismissed within sixty days from the date of its commencement.

(Op. Agreement § 12.4.)

16.     Pursuant to Article Two of the Operating Agreement, the Company holds real estate assets.  (*See* Am. Compl. ¶ 46; Op. Agreement Art. 2.)  Specifically, the Company holds five parcels of land in Rowan County, North Carolina.  (Am. Compl. ¶ 10.)

17.     With respect to the rights and duties of the members, the Operating Agreement provides that "[e]xcept as herein expressly provided to the contrary, all decisions affecting the business of the Company shall be made by the Members named herein[,]"  and further provides that "[t]he Members shall manage and control the affairs of the Company in a prudent a reasonable manner to carry out the business of the Company set forth herein."  (Op. Agreement § 9.1.)  In addition, the Operating Agreement states that "[t]he Company shall not take or agree to take any of the following actions without the consent of all of the Members[.]"  (Op. Agreement § 9.3.)

These actions are referred to as "Major Decisions" under the Operating Agreement. (*See generally* Op. Agreement.)

### C.    The Demand Letter & Plaintiff's Allegations

18.    On 21 April 2025, Plaintiff delivered a letter to Defendants (the Demand Letter). (Am. Compl. Ex. A [Dem. Letter], ECF No. 13.) The Demand Letter requests, pursuant to N.C.G.S. § 55-7-41, that the Company investigate, act upon, and resolve the following:

1. Optimizing the use of company property for the benefit of <u>all</u> of its members. Said company shall include both real and personal, and said property shall include but not be limited [sic] the real property upon which Mr. Wesley Steele maintains, feed[s], and raises cattle without paying rent;
2. In addition and/or in the alternative, dissolving the company and distribut[ing]its assets including the real property, in accordance with the respective ownership interests of its Members;
3. Partitioning the company's real property as necessary to properly dissolve the company and distribute its assets; and,
4. Otherwise addressing the current gridlock that is wholly frustrating the administration of the company in that no one can agree on what the company assets are, how to use company assets, whether there has been self-dealing and/or self-enrichment by Mr. Wesley Steele and to what extent, and how to dissolve the company and distribute its assets.

(Dem. Letter 1–2.)

19.    In addition to the concerns raised in the Demand Letter, Plaintiff asserts further allegations in the *Amended Complaint*. (*See* Am. Compl. ¶¶ 11–17.) These allegations center on Steele's alleged use of Company land to raise cattle without paying rent to the Company and include; refusing to follow corporate formalities, allowing Company assets to waste, causing gridlock, and preventing

Plaintiff from enjoying her rightful benefits under the Operating Agreement or from fulfilling the purpose of the Company. (*See* Am. Compl. ¶¶ 11–17.)

## III. PROCEDURAL BACKGROUND

20. On 13 October 2025, Plaintiff initiated this action against Defendants upon the filing of the *Complaint*. (ECF No. 3.)

21. On 4 December 2025, Plaintiff filed her *Amended Complaint*. (ECF No. 13.)

22. On 29 December 2025, the Sisters filed the Sisters' Motion, moving to dismiss Plaintiff's causes of action under Rule 12(b)(6).

23. After the Sisters moved to dismiss, Plaintiff voluntarily dismissed her second claim for UDTP. (Not. Volun. Dism., ECF No. 22.)

24. After the parties stipulated to an extension of time for Steele to respond to the Amended Complaint, Steele filed the Steele Motion on 20 January 2026. (See Stip. Exten. Time Def. Wesley Steele Resp. Pl.'s Am. Compl., ECF No. 18.) The Steele Motion requested that the Court dismiss Plaintiff's causes of action under both Rule 12(b)(1) of the North Carolina Rules of Civil Procedure (Rule 12(b)(1)) as well as under Rule 12(b)(6). (Steele Mot.) Significantly, Steele, unlike the Sisters, moved to dismiss Plaintiff's fourth claim for appointment of a receiver and sixth claim for dissolution of the Company pursuant to N.C.G.S. § 57D-6-02(2). (See generally Steele Mot.; Steele Supp. Br.)

25. Following full briefing, the Court held a hearing on the Motions on 6 March 2026 (the Hearing), at which all parties were represented by counsel. (See Not. Hearing & Case Mgmt. Conf., ECF No. 30.)

26. The Motions are ripe for resolution.

## IV.    LEGAL STANDARD

27. In ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the Court reviews the allegations in the *Amended Complaint* in the light most favorable to Plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670 (1987). The Court accepts all well-pleaded factual allegations in the relevant pleading as true. *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court is therefore not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Hum. Servs.*, 174 N.C. App. 266, 274 (2005) (citation omitted).

28. Furthermore, the Court "can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC.*, 251 N.C. App. 198, 206 (2016) (citation omitted). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment.

*Id.* (citation omitted). Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (citation omitted).

29. Our Supreme Court has observed that "[i]t is well established that dismissal pursuant to Rule 12(b)(6) is proper when '(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.'" *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (quoting *Wood v. Guilford Cnty.*, 355 N.C. 161, 166 (2002)). This standard of review for Rule 12(b)(6) motions is the standard our Supreme Court "routinely uses . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 615 n.7 (citations omitted).

30. In this case, the resolution of the Motions to Dismiss under Rule 12(b)(6) also resolves the issues relevant to the Rule 12(b)(1) analysis, and thus, a detailed discussion of the legal standard for a review of a motion to dismiss under Rule 12(b)(1) is omitted.

## V. ANALYSIS

31. The Sisters moved to dismiss first, arguing that: (1) all derivative claims should be dismissed because Plaintiff failed to give a proper pre-suit demand; (2) Plaintiff's claim for breach of fiduciary duties should be dismissed because Defendants do not owe fiduciary duties to Plaintiff individually or to the Company;

(3) Plaintiff's claim for negligence should be dismissed because it relies solely upon the existence of the above-mentioned fiduciary duties that the Sisters claim do not exist; (4) the UDTP claim is improper because Plaintiff fails to allege that the internal disputes between Company members were in or affecting commerce; (5) Plaintiff's fifth claim for dissolution of the Company pursuant to N.C.G.S. § 57D-2-20(c) is defeated by the Operating Agreement's plain language that establishes statutory compliance; and (6) Plaintiff's seventh claim for declaratory judgment fails because no actual conflict exists between the parties based on Section 12.4 and because no conflicts exist between Sections 13.1 and 13.2, and N.C.G.S. § 57D-2-30. (*See generally* Sister Mot.; Sisters' Supp. Br.)

32. The Court will address the derivative claims as a whole before addressing each of Plaintiff's causes of action individually.

A. **Sufficiency of the Demand**

33. The Court will deal first with the question of the sufficiency of Plaintiff's pre-suit demand and thereby address Defendants' request that all derivative claims be dismissed. Plaintiff sent the Demand Letter to the members of the Company on 21 April 2025, which purports to "make demand pursuant to N.C. Gen. Stat. § 55-7-41[.]" (Dem. Letter 1.) The Sisters argue that the Demand Letter is insufficient because it is self-interested, is not properly made "on the LLC," and is stated to be made pursuant to N.C.G.S. § 55-7-41 instead of being made pursuant to N.C.G.S. § 57D-8-01. (*See* Sisters' Supp. Br. 17–18.) Steele argues that the Demand Letter is insufficient because it is self-interested and because it lacks a clear and particular

demand for Company action. (*See* Steele Supp. Br. 22–24.) Steele, like the Sisters, also argues that Plaintiff's pre-suit demand is insufficient because it cites the incorrect statute. (Steele Supp. Br. 24.)

34. To have standing to bring her derivative claims, Plaintiff must have made a proper demand. N.C.G.S. § 57D-8-01; *Anderson v. Seascape at Holden Plantation, LLC*, 241 N.C. App. 191, 205–06 (2015). For a member to bring a derivative claim on behalf of an LLC, the North Carolina Limited Liability Company Act requires that:

> [t]he member made written demand on the LLC to take suitable action, and either (i) the LLC notified the member that the member's demand was rejected, (ii) 90 days have expired from the date the demand was made, or (iii) irreparable injury to the LLC would result by waiting for the expiration of the 90-day period.

N.C.G.S. § 57D-8-01(a)(2).

35. The purpose of the demand requirement is to "give the LLC the opportunity to remedy the alleged problem without resort to judicial action, or, if the problem cannot be remedied without judicial action, to allow the LLC, as the true beneficial party, the opportunity to bring suit first against the alleged wrongdoers." *Barefoot v. Barefoot*, 2022 NCBC LEXIS 8 at *9–10 (N.C. Super. Ct. Feb. 2, 2022) (*citing Zoutewell v. Mathis*, 2018 NCBC LEXIS 95 at *18 (N.C. Super. Ct. Sept. 13, 2018.) "The demand must be made with sufficient clarity and particularity to permit the [LLC] . . . to assess its rights and obligations and determine what action is in the best interest of the company." *Garlock v. Hilliard*, 2000 NCBC LEXIS 6, at *9 (N.C. Super. Ct. Aug. 22, 2000) (quoting *Greene v. Shoemaker*, 1998 NCBC LEXIS 4 at *9 (N.C. Super. Ct. Sep. 24, 1998)).

36.     The Court disagrees with Defendants' arguments that the Demand Letter is insufficient.  As an initial matter, the Demand Letter was made "on the LLC."  In arguing that Plaintiff has not alleged that the demand was made on the LLC, the Sisters point out Plaintiff's statement that the demand was sent to the other members of the LLC, not the LLC itself.  (Sisters' Supp. Br. 17–18.)  This argument, while begging the question who else Plaintiff could send a demand letter to in a closely-held LLC, ignores the fact that the Demand Letter is addressed to the Company at its registered address and Defendants do not contend it was not received there.  (*See* Dem. Letter 1.)  The Court thus concludes that the demand was successfully made on the Company.

37.     Further, the Demand Letter requests that the Company take suitable action, as it asks the Company to "investigate, act upon, and resolve" four specific demands raised.  (Dem. Letter 1–2.)  Steele argues that these four demands do not contain a request for suitable action.  (*See* Steele Supp. Br. 24–25.)  Steele argues that the first "demand" essentially amounts to a demand for the Company to "do better for your owners," and that the second, third, and fourth demands request the Company to take actions it is not allowed to take without the consent of all of its members in dissolving the Company, partitioning the Company's property, or changing the votes of its members. (Steele Supp. Br. 24–25.) The Court does not find these arguments persuasive.  First, while it may be impermissible for only one member of the Company to take actions like dissolving the Company or distributing its assets, an LLC such as this one can only act through its members.  Thus, while no

one member could take these actions individually, the fact that these demands were made on the Company as a whole suggests that the demands are made to all members. Second, to the extent that any of the four demands do not ask for suitable action on their own, the Demand Letter does not demand that the Company take all of the actions in the specific demands, but merely that the Company "investigate, act upon, and resolve" the issues contained within the demands. (Dem. Letter 1–2.) The Company can investigate dissolving the Company, determine that that would be infeasible, and then resolve the issue by not dissolving the Company all while being in compliance with the demand to "investigate, act upon, and resolve" the issues raised. The Demand Letter thus does not require the Company to take any impermissible action and therefore demands suitable action.

38. No party has challenged the timeliness of this suit after the Demand Letter was sent, and it appears to the Court that this suit was filed more than 90 days after the Demand Letter was received as required by N.C.G.S. § 57D-8-01(a)(2). Thus, the Court concludes that the Demand Letter was sent sufficiently early to meet statutory requirements.

39. The Court also concludes that the Demand Letter is sufficiently clear and particular such as to permit the Company to assess its rights and obligations and determine its further actions. It appears to the Court from the briefing, that the first demand regarding "[o]ptimizing the use of company property for the benefit of all of its members" is the only demand attacked for its clarity and particularity. (*See* Steele Supp. Br. 24.) While this demand could certainly be more specific, Steele's argument

that no specific action is demanded with respect to this demand is incorrect. As stated above, the Demand Letter contains requests that the Company "investigate, act upon, and resolve" the stated issues. Thus, the request to optimize the use of Company property is modified by the request to investigate such an action. While what "optimizes" benefits is subjective, investigating how to do so is much less open to interpretation. Ultimately, the requests contained in the Demand Letter are sufficiently clear and particular to allow the Company to assess its rights and options and choose how to act.

40.    Further, the Court does not agree with Defendants that the claims raised by the Demand Letter are actually self-interested. On its face, the Demand Letter clearly asserts the interests of the Company as a whole or of all the members of the Company. The demand asks that the Company's property be used "for the benefit of all of its members[,]" that the Company's assets be distributed "in accordance with the respective ownership interest of its Members[,]" and that the Company investigate whether there is self-dealing and self-enrichment by Steele. (Dem. Letter 1–2.) These requests either explicitly or implicitly pertain to the interests of the Company as a whole, as some demands request benefits go to every member of the Company, while another requests that potential self-dealing that could hurt the Company be addressed. Plaintiff's Demand Letter is not self-interested.

41.    Finally, the Court does not agree with Defendants that Plaintiff's citation to the incorrect statute renders the Demand Letter insufficient. While the incorrect citation is clearly an oversight on Plaintiff's part, nothing in N.C.G.S. § 57D-

8-01 nor in the case law the Court has examined around that statute makes citing the wrong statute grounds for insufficiency and hence dismissal of an otherwise proper derivative claim.

42.     Therefore, the Motions, as they relate to the request that all derivative claims be dismissed because of the supposed insufficiency of the Demand Letter, are hereby **DENIED**.

## B.     <u>Breach of Fiduciary Duties</u>

43.     Plaintiff's first cause of action is for breach of fiduciary duty against Defendants.  (Am. Compl. ¶¶ 20–23.)  Plaintiff brings this claim both individually and on behalf of the Company.  (Am. Compl. ¶ 21.)  Defendants attack this claim by stating that they do not owe either Plaintiff individually, or the Company as a whole, any fiduciary duties.  (*See* Sisters' Supp. Br. 7–8; Steele Supp. Br. 8–12.)

44.     "For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties."  *Green v. Freeman*, 367 N.C. 136, 141 (2013) (quoting *Dalton v. Camp*, 353 N.C. 647, 651 (2001)).  "North Carolina recognizes two types of fiduciary relationships: *de jure*, or those imposed by operation of law, and *de facto*, or those arising from the particular facts and circumstances constituting and surrounding the relationship."  *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 355 (2019) (citation omitted).

45.     Shareholders or members of an LLC do not owe each other *de jure* fiduciary duties individually.  *Bennett v. Bennett*, 2019 NCBC LEXIS 19, at *19–20 (N.C. Super. Ct. Mar. 15, 2019).  That said, majority shareholders within an LLC may

owe *de facto* fiduciary duties to each other if they exercise control over the LLC. *Vanguard Pai Lung, LLC v. Moody,* 2019 NCBC LEXIS 39, at \*17–18 (N.C. Super. Ct. June 19, 2019) (citations omitted). In *Vanguard* this Court set out several possible actions that can be taken by a majority member that would tend to show control of the company by that member. *Id.* at \*19–21. These actions include (1) managerial control over a board of directors or other managers, (2) the ability to dissolve the company; (3) the ability to declare bankruptcy; and (4) the ability to amend the operating agreement without approval from other members. *Id.*

### 1. Breach of Fiduciary Duties Owed to Plaintiff Individually

46. Here, while Plaintiff makes this claim against Defendants, who collectively hold a majority interest in the Company, there does not appear to be any allegation that Defendants exercise control over the Company. In fact, the Operating Agreement makes it clear that Defendants have no such control.

47. Section 9.3 of the Operating Agreement specifies "Major Decisions" cannot be taken without unanimous consent of the members of the Company. These "Major Decisions" encompass major managerial decisions and include:

(a) The admission of any person as a member;
(b) Selling transferring or otherwise disposing of all or substantially all of the Company's assets;
(c) Making capital expenditures exceeding $10,000 in any one year; or
(d) Merging the Company into or with another limited liability company.

(Op. Agreement § 9.3.)

48. In addition to most managerial decisions requiring the unanimous consent of the Company's members, Section 14.2 of the Operating Agreement requires the unanimous consent of all the Company's members to amend the

Operating Agreement. (Op. Agreement § 14.2.) Finally, Sections 13.1 and 13.2 of the Operating Agreement make it clear that Defendants, acting alone, cannot dissolve the Company which can only be dissolved either automatically by a triggering event or by agreement of all members. (Op. Agreement §§ 13.1–.2.)

49. Thus, Defendants, as a collective majority, do not exercise control over the Company. They do not have managerial control over the Company or its board of directors, and they cannot amend the Operating Agreement or dissolve the Company without Plaintiff's consent. Thus, because Defendants do not control the Company, they do not owe Plaintiff individually any fiduciary duties. As such, the claim for breach of fiduciary duties brought by Plaintiff individually, is hereby **DISMISSED** and the Motions are **GRANTED** with respect to that claim.

### 2. Breach of Fiduciary Duties Owed to the Company

50. Plaintiff also claims that Defendants have breached the fiduciary duties they owe to the Company as a whole. (Am. Compl. ¶¶ 21–23.). Plaintiff argues that, because all members of the Company are designated member-managers, all members, in their role as managers, owe the Company fiduciary duties. (Pl.'s Br. Opp. Def. Wesley Steele's Mot. Dism. Am. Compl. 5, ECF No. 29 [Opp. Br. Steele Mot.].) Steele counters that Section 9.5 of the Operating Agreement abrogates any fiduciary duties Defendants, as member-managers, may otherwise owe to the Company. (Def. Wesley Steele's Rep. Br. Supp. Mot. Dism. Pl.'s Am. Compl. 4, ECF No. 32 [Steele Rep. Br.].)

51.     While managers of an LLC usually do not owe fiduciary duties individually to members of an LLC, managers generally owe fiduciary duties to the company as a whole under N.C.G.S. § 57D-3-21. *See, e.g., Barefoot v. Barefoot*, 2022 NCBC LEXIS 8, at *23–24 (N.C. Super. Ct. Feb. 2, 2022). That said, because "an LLC is primarily a creature of contract[,]" members of an LLC are usually free to arrange their relationship within the LLC by agreement as they wish. *Crouse v. Mineo*, 189 N.C. App. 232, 237 (2008) (citation omitted). Among the freedom given to LLC members to set the rules of their relationship within the LLC is the ability to impose or eliminate fiduciary duties for members and managers. *Vanguard Pai Lung, LLC*, 2019 NCBC LEXIS 39, at *17 (citing *Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, at *36 (N.C. Super. Ct. Oct. 21, 2016)).

52.     Here, Steele argues that Section 9.5 of the Operating Agreement eliminates the fiduciary duties that managers of the Company owe to the Company as a whole. (Steele Rep. Br. 4–5.) Section 9.5 states as follows:

> Section 9.5. *Liability of Members*. No Member shall be personally liable, responsible or accountable in damages or otherwise to the other Members or to the Company for any acts performed by him within the scope of the authority conferred upon him by this Agreement except for acts of gross negligence or willful misconduct.

(Op. Agreement § 9.5.)

53.     Section 9.5 does drastically limit potential liability for breaches of member fiduciary duties, as it removes liability for acts to other members and to the Company. Nonetheless, Section 9.5 limits its abrogation of fiduciary duties to those violations of such duties that do not represent "gross negligence or willful misconduct." (Op. Agreement § 9.5.) Thus, even though Section 9.5 drastically limits

fiduciary duties owed by members of the Company, members are still liable if they commit acts constituting willful misconduct.

54. The question remains whether Defendants' conduct in the present case could constitute willful misconduct. Steele's alleged conduct of allowing his cattle to graze on Company property and of paying the Sisters for the privilege of doing so is almost certainly willful, as it is inconceivable that such actions would happen by accident. That said, as stated above, the Company's stated purpose is to "hold family investments, including farms and real estate[.]" (Op. Agreement Art. 2.) If the LLC is really meant to only hold the properties and not to maximize their profitability, it is certainly possible that Defendants' alleged conduct, while willful, was not "willful misconduct," as Defendants may have believed that their actions did no harm to the LLC's purpose of holding the land. In any event, the issue of whether Defendants' alleged misconduct would constitute "purposeful misconduct" is a live one. Thus, when all assumptions are made in Plaintiff's favor, the possibility exists that Defendants engaged in willful misconduct and thus violated the fiduciary duty they owe to the Company, notwithstanding Section 9.5. The Motions as to the claim for breach of fiduciary duties, as it relates to the duties owed to the Company, are therefore **DENIED**.

### C. Negligence

55. Plaintiff brings an individual claim for negligence as her third claim. (Am. Compl. ¶¶ 30–34.) Plaintiff claims that Defendants were negligent as to the fiduciary duties they allegedly owe Plaintiff as managing members of the Company

and fiduciary duties owed to Plaintiff "by virtue of possessing property Plaintiff have [sic] a vested interest in by virtue of the purpose of the Company to distribute these assets according to each party's respective interest." (Am. Compl. ¶¶ 31–32.)

56. Both sets of Defendants argue that the claim for negligence should be dismissed insofar as it relies on the alleged fiduciary duties that Defendants owe Plaintiff as a result of being member-managers of the Company. (*See* Steele Supp. Br. 13; Sisters' Supp Br. 10–11.) Only Steele argues that the second alleged duty does not constitute a valid duty under North Carolina law and thus cannot be the basis for a negligence claim. (Steele Supp. Br. 13.)

57. For their part, when the Sisters argued that Plaintiff's claim for negligence was "wholly based on her deficient breach of fiduciary duty claim[,]" Plaintiff did not argue that there was in fact a second pleaded duty upon which the claim relied. (*See generally* Pl.'s Br. Opp. Defs. Mary M. Hintz, Cari M. McCachren-Shah, & Kristen M. Raymer's Mot. Dism. Am. Compl., ECF No. 20 [Br. Opp. Sisters' Mot.].)

58. Because Plaintiff did not respond to the argument that her negligence claim was based solely on her claim for breach of fiduciary duties, that argument is considered unopposed. As such, the Court considers the fiduciary duties allegedly owed by Defendants to Plaintiff as the only alleged duties upon which the negligence claim can be based. Because it has already been determined that Defendants do not owe Plaintiff any fiduciary duties, the negligence claim is hereby **DISMISSED**, as Plaintiff has failed to plead that Defendants owe a duty to Plaintiff that is recognized

by law.  Therefore, the Motions are hereby **GRANTED** with respect to the negligence claim.

### D.　　Receivership and Dissolution of the Company

59.　　Through her fourth, fifth, and sixth claims for relief, Plaintiff seeks appointment of a receiver under N.C.G.S. § 1-507.24 and to dissolve the Company under N.C.G.S. § 57D-2-20(c) and N.C.G.S. § 57D-6-02(2).  (Am. Compl. ¶¶ 35–44.)

60.　　It is well-settled under North Carolina law that the appointment of a receiver and the dissolution of a company are remedies, not distinct causes of action. *See Camacho v. McCallum*, 2016 NCBC LEXIS 81, at \*31 (N.C. Super. Ct. Oct. 25, 2016); *Comput. Design & Integration, LLC v. Brown*, 2018 NCBC LEXIS 216, at \*74–75 (N.C. Super. Ct. Dec. 10, 2018).

61.　　Because Plaintiff makes claims for relief out of what are merely remedies, the Motions to Dismiss the claims for the appointment of a receiver and for the dissolution of the Company are hereby **GRANTED** and these claims are hereby **DISMISSED without prejudice**.  Because the appointment of a receiver and the dissolution of a company are valid remedies for harms committed against a litigant, the dismissal of these claims is without prejudice and does not prevent the Court from awarding, nor Plaintiff from seeking, these exact remedies later on in this litigation upon a showing of factual and legal entitlement.

### E.　　Declaratory Judgment with respect to Sections 12.4, 13.1, and 13.2 of the Operating Agreement

62.　　As stated above, Section 12.4 of the Operating Agreement details a process by which the remaining members of the Company can buy back the share of

the land that belongs to a now deceased or bankrupt member after said member's death or bankruptcy. (Op. Agreement § 12.4.)

63. Also as stated above, Sections 13.1 and 13.2 of the Operating Agreement provide that the Company cannot be dissolved by a single member of the LLC acting individually, but can instead be dissolved only upon the occurrence of predetermined dissolution events, which include agreement by all members. (Op. Agreement §§ 13.1–.2.)

64. Plaintiff alleges that Section 12.4 is problematic because it "effectively penalizes the members for the Company's continued existence." (Am. Compl. ¶ 46.) Plaintiff further argues that Sections 13.1 and 13.2 impermissibly restrict the members' ability to sue for dissolution of the Company as is their right under N.C.G.S. § 57D-2-30. (Am. Compl. ¶ 47.)

65. An action for declaratory judgment "will lie only in a case in which there is an actual or real existing controversy between parties having adverse interests in the matter in dispute." *Lide v. Mears*, 231 N.C. 111, 118 (1949).

### 1. Section 12.4

66. Here, because no member of the Company has died nor declared bankruptcy, Section 12.4 is not applicable to the current factual scenario. The *Amended Complaint* therefore fails to allege that an actual dispute, as opposed to a theoretical or hypothetical one, over this section exists or will exist in the future. The Court, therefore, **GRANTS** the Motions with respect to the claim for declaratory

judgment as it relates to Section 12.4 of the Operating Agreement and this claim is dismissed without prejudice.

### 2. Sections 13.1 and 13.2

67. With respect to Sections 13.1 and 13.2, Steele argues that these sections were never meant to be interpreted as restricting the right to seek judicial dissolution of the Company. (Steele Supp. Br. 21–22.) Instead, Steele argues that these provisions should be interpreted as disallowing dissolution of the Company at the request of an individual member by means other than judicial process. (Steele Supp. Br. 21.) Because the only interpretation of Sections 13.1 and 13.2 given by Defendants in this case is that these sections do not preclude any member from seeking judicial dissolution, Plaintiff's concern with these sections is resolved. In fact, Plaintiff's requested relief, at least in part, is that the Court interpret Sections 13.1 and 13.2 to allow members to seek judicial dissolution. (*See* Am. Compl. ¶¶ 45–48.) Steele's interpretation of Sections 13.1 and 13.2 essentially satisfies the relief sought by Plaintiff.

68. The Court thus determines that there is currently no actual conflict with respect to the interpretation of Sections 13.1 and 13.2 between Plaintiff and Defendants, as both sides agree that these sections should be interpreted so as not to preclude members from seeking judicial dissolution. Thus, because there is no actual conflict, declaratory relief is unnecessary. The Motions are therefore **GRANTED** as to Sections 13.1 and 13.2 and said claim is hereby **DISMISSED** without prejudice to Plaintiff bringing the same claim again if it becomes clear that Defendants actually

believe that these sections do limit the members' ability to bring suit for judicial dissolution.

## VI. CONCLUSION

69. For the foregoing reasons, the Court hereby **GRANTS in part** and **DENIES in part** the Motions as follows:

    a. The Motions are **DENIED** as to Defendants' contention that all derivative claims should be dismissed.

    b. The Motions are **GRANTED** as to Plaintiff's individual claim for breach of fiduciary duties.

    c. The Motions are **DENIED** as to Plaintiff's claim for fiduciary duties as to the Company as a whole.

    d. The Motions are **GRANTED** as to Plaintiff's claim for negligence.

    e. The Motions are **GRANTED** as to Plaintiff's claims for appointment of a receiver and for dissolution of the Company.

    f. The Motions are **GRANTED** as to Plaintiff's claim for declaratory relief with respect to Section 12.4 of the Operating Agreement.

    g. The Motions are **GRANTED** as to Plaintiff's claims for declaratory relief with respect to Sections 13.1 and 13.2 of the Operating Agreement.

**IT IS SO ORDERED**, this the 15th day of April, 2026.

/s/ Michael L. Robinson
Michael L. Robinson
Chief Business Court Judge